# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00753-SCT

## CONSOLIDATED WITH

## NO. 1999-CA-01395-SCT

*CORNELIUS TURNER*

*v.*

*JOHNNIE TERRY, JR., BOBBY T. HENDERSON, MELVIN I. EVANS AND RAPHAEL L. WILLIAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/1998 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GAIL WRIGHT LOWERY |
| | DORIAN E. TURNER |
| ATTORNEY FOR APPELLEES: | JAMES L. MARTIN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 2/22/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/15/2001 |

**BEFORE PITTMAN, C.J., SMITH AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Cornelius Turner filed suit against Johnnie Terry, Jr., Bobby T. Henderson, Melvin I. Evans, and Raphael Williams to enforce promissory notes executed in his favor. The Hinds County Circuit Court refused to enforce the signed documents against Terry, Henderson, and Evans, finding that they were unaware that they were signing promissory notes. The trial court enforced the pledge and security agreements, along with the stock assignments, and ordered Terry, Henderson, and Evans to transfer their shares of First Commerce Bancorporation to Turner. However, the circuit court found the promissory note executed by Williams to be enforceable and entered a judgment against him for $66,666.68, plus interest. Turner does not appeal the judgment against Williams. On appeal, Turner raises the following issues:

> **I. WHETHER THE TRIAL COURT IMPROPERLY CREDITED PAROL EVIDENCE WHERE IT WAS FOUND AS A MATTER OF FACT THERE WAS NO FRAUD AND MISREPRESENTATION BY CORNELIUS TURNER**

**II. WHETHER THE TRIAL COURT COMMITTED ERROR AS A MATTER OF LAW IN FAILING TO AWARD ATTORNEYS' FEES PURSUANT TO THE TERMS OF THE PROMISSORY NOTE EXECUTED BY EACH DEFENDANT**

**III. WHETHER THE TRIAL COURT APPLIED AN INCORRECT LEGAL ANALYSIS TO CORNELIUS TURNER'S CLAIM FOR PAYMENT UNDER THE PROMISSORY NOTES**

## CROSS - APPEAL

## I. WHETHER THE TRIAL COURT ERRED IN AWARDING THE STOCK TO TURNER

## FACTS

¶2. In May of 1990, Cornelius Turner, Johnnie Terry, Melvin Evans, Bobby Henderson, Joe Dockins, and Raphael Williams formed First Commerce Bancorporation (First Commerce), a Delaware corporation, for the express purpose of acquiring the assets and assuming the deposit liabilities of State Mutual Federal Savings and Loan Association. Each investor served on the First Commerce board of directors, of which Turner was chairman. Williams, the only investor possessing extensive banking experience, served as president and chief executive officer of First Commerce. The group's goal was to establish a minority-owned savings and loan association in Jackson, Mississippi.

¶3. Turner, Terry, Evans, Henderson, Williams and Dockins arranged to purchase State Mutual from the Resolution Trust Corporation, an agency created under federal law which acts as a receiver for failed savings banks under the direction of the Office of Thrift Supervision, an office of the U.S. Department of Treasury. The purchase was financed in part by the investors' initial contributions, which were as follows:

| NAME | NUMBER OF SHARES | AMOUNT PAID |
|---|---|---|
| Ralph Williams | 560 | $56,000 |
| Bobby T. Henderson | 250 | $25,000 |
| Johnnie Terry | 250 | $25,000 |
| Cornelius Turner | 150 | $15,000 |
| Joe T. Dockins | 100 | $10,000 |
| Melvin I. Evans | 100 | $10,000 |

The Resolution Trust Corporation provided the remaining two-thirds of the purchase price and loaned First Commerce $200,000 under its minority financing program. Repayment was expected on or before February 11, 1991.

¶4. The investors were unable to raise the necessary capital to repay Resolution Trust Corporation and, therefore, met to discuss a solution. Terry, Henderson, Evans, Williams, and Dockins testified at trial that Turner agreed to loan First Commerce the funds to repay Resolution Trust if the other investors agreed to put their stock up as collateral. Each investor, with the exception of Dockins, agreed to this arrangement.

¶5. Williams, Henderson, Terry, and Evans executed promissory notes evidencing their indebtedness to Turner. They further executed pledge and security agreements, and stock assignments, pledging their stock in First Commerce as collateral securing the loan. According to the promissory notes, Turner loaned each investor the following amounts: Terry and Henderson, $29,761.90 each; Williams $66,666.68; and Evans $11,904.76. Checks in these amounts, drawn on the account of Major Associates, Inc., a corporation controlled by Turner, were deposited into the First Commerce account. The corporation used these funds to repay Resolution Trust. Moreover, additional stock was issued to each investor, with Williams receiving 660 shares, Henderson and Terry 297 shares each, Evans 119 shares, and Turner 120 shares. At trial, Terry, Henderson, and Evans claimed they were unaware that additional shares had been issued.

¶6. On July 25, 1991, Williams, president of First Commerce, issued an irrevocable line of credit on behalf of Major Associates for $59,000 to Midwest Indemnity Corporation. Major Associates defaulted, and Midwest demanded payment. Williams later paid Midwest $8,200 to satisfy outstanding debts covered by the letter of credit. The Office of Thrift Supervision conducted an investigation, resulting in the removal of Williams as president of First Commerce in 1992. The Office of Thrift Supervision further directed Turner to completely disassociate himself from First Commerce. Turner resigned as chairman of the board, effective April, 1992.

¶7. On March 9, 1993, Turner brought suit in the Hinds County Circuit Court against Terry and Henderson seeking to recover the amounts due under the promissory notes. Terry and Henderson asserted a counterclaim against Turner, and also filed a third-party complaint against Williams which was later dismissed. On October 28, 1994, Turner filed a complaint against Williams and Evans in an effort to recover the amounts due under the promissory notes which they executed. Williams and Evans also filed a counterclaim against Turner. The two cases were later consolidated for purposes of judicial efficiency at trial.

¶8. On January 5 and 6, 1998, a bench trial was held before Hinds County Circuit Judge James E. Graves, Jr. Judge Graves issued his opinion and order on September 16, 1998, in which he found that the promissory notes were unenforceable, as there had been no "meeting of the minds" between Turner and Terry, Henderson, and Evans. Judge Graves did hold that the pledge and security agreements and stock assignments were enforceable and ordered Terry, Henderson, and Evans to transfer their First Commerce stock to Turner.[1] Moreover, the court found that Williams had breached a fiduciary duty to Turner. Accordingly, it found that the promissory note executed by Williams in favor of Turner was enforceable, and entered a judgment against Williams for $66,668.68, with interest at the rate of ten percent per annum less the $8,200 previously given Turner by Williams.

¶9. On June 28, 1999, the circuit court entered an order in which it found neither Terry, Henderson, nor Evans were liable to Turner for attorneys' fees because of the invalidity of the promissory notes. The circuit court did determine that Williams was liable for one-fourth of the attorneys' fees sought by Turner.

## STANDARD OF REVIEW

¶10. This Court's standard of review of a judgment from a bench trial is well-settled. "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993). This Court will not disturb those findings unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Bell v. City of*

*Bay St. Louis*, 467 So. 2d 657, 661 (Miss. 1985).

## LEGAL ANALYSIS

### I. WHETHER THE TRIAL COURT IMPROPERLY CREDITED PAROL EVIDENCE WHERE IT WAS FOUND AS A MATTER OF FACT THERE WAS NO FRAUD AND MISREPRESENTATION BY CORNELIUS TURNER

¶11. Turner alleges that the trial court erred in considering parol evidence. Specifically, he objects to consideration of testimony regarding the board members' prior discussions regarding the loans and the circumstances under which they were made. Turner maintains that the trial court erred in going beyond the "four corners" of the promissory notes and claims that any reliance upon prior discussions was improper.

¶12. Though the amount of each loan varied, the promissory notes signed by Terry, Henderson, and Evans contained identical terms. The text of the promissory notes reads, in part, as follows:

> FOR VALUE RECEIVED, _____, having an address at _____, ("Maker"), promises to pay to the order of Cornelius Turner ("Payee"), at his office at 207 W. Amite Street, No. 10, Jackson, Mississippi 39201-1205, or such other address as may hereafter be specified by Payee, the principal sum of _____, together with interest thereon at the rate of ten percent (10%) per annum on the outstanding principal balance, said principal and interest to be paid at the time and in the manner as hereinafter provided. The indebtedness evidenced by this Note represents a loan (the "Loan") being made by Payee to Maker on the date hereof.

> The principal of and interest on this Note at the rate set forth above shall be paid in one (1) installment on or by November 1, 1991, which payment shall be in an amount equal to the outstanding principal balance of the Loan together with all accrued and unpaid interest thereon and any other sums due in connection therewith. . . .

> IN WITNESS WHEREOF, Maker, intending to be legally bound hereby, has caused this Note to be duly executed on this 11th day of February, 1991.

¶13. At trial, defense counsel proposed to question Raphael Williams about the Board's discussions regarding repayment of the Resolution Trust loan. Turner's attorney objected, contending that such testimony constituted parol evidence. The trial court reserved ruling on the admissibility of the parol evidence, explaining:

> [S]o it is clear for the record, the Court is going to allow testimony and evidence in connection with those discussions which preceded the execution of the agreement but the Court reserves the right to make a determination at the conclusion of the presentation of the evidence as to whether or not that application is appropriately admissible and subject to being considered with regard to the Court's ultimate determination on the issues in this case. Which is to say that the Court could hear all of the testimony and evidence and decide at the conclusion of the case that there are portions of that evidence which should be excluded from consideration by the Court in making a determination on the issues in the case and which should be excluded based on the objections raised by the Plaintiff that those matters constitute parol evidence.

The court later found that the parol evidence was admissible, stating "I'm going to allow all of these

discussions about what they agreed to when in fact there's a written agreement that memorializes what they allegedly agreed to. But in spite of that, I've decided I'm going to allow in all of these discussions."

¶14. The parol evidence upon which the trial court relied consisted of testimony regarding the parties' discussions surrounding repayment of the Resolution Trust Corporation loan. Raphael Williams testified that the Board's original intent was to sell additional shares of stock in order to raise the money to repay Resolution Trust. When it was unsuccessful, the Board met, and Turner agreed to loan First Commerce the $138,000 to repay the loan. Williams claimed that Turner was to be repaid later from funds raised by selling stock in First Commerce. He claimed that there was no discussion of the board members being held personally liable on the promissory notes, as the loan was to the corporation, not to the individual board members. Evans, Terry, Henderson, and Dockins testified consistently with Williams's version of events.

¶15. The trial court held that the promissory notes were unenforceable, as there had been no "meeting of the minds" between Turner and Terry, Henderson, and Evans. He went on to order Terry, Henderson, and Evans to transfer their stock to Turner. The court explained,

> The record reflects that those three were unaware that they were signing promissory notes. The Plaintiff, as well as the Defendants Terry, Henderson and Evans, relied heavily upon the knowledge of Defendant Raphael Williams with his approximately 15 years of sophisticated business and banking experience, to organize, operate and handle all matters necessary for the progression of the corporation. Therefore, the Court finds that the promissory notes between the Plaintiff and Defendants Terry, Henderson and Evans are invalid. However, the Court finds that the separately signed Pledge, Security Agreement and Stock Assignment, assigning to Plaintiff all of the Defendant's right, title and interest in such stock is valid as the Defendant's knew or reasonably should have known that their stock was being used as collateral for the loan. In fact, Defendant Terry testified that he knew that he (Terry) was putting his stock "up against" Plaintiff's "money" (the loan). . . .

### A. PAROL EVIDENCE

¶16. Under Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract. *Heritage Cablevision v. New Albany Elec. Power Sys.*, 646 So. 2d 1305, 1312 (Miss. 1994). Parol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand. *Grenada Auto Co. v. Waldrop*, 188 Miss. 468, 195 So. 491, 492 (1940). The parol evidence rule is one of substantive law rather than of evidence. *Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1383 (Miss. 1996).

¶17. "In contract construction cases our focus is upon the objective fact -- the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989). Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Cherry v. Anthony,* 501 So. 2d 416, 419 (Miss. 1987).

¶18. Although parol evidence which contradicts, varies, alters, adds to, or detracts from the written agreement is not admissible, this bedrock rule "is subject to many exceptions and is said to be very flexible."*Byrd v. Rees*, 251 Miss. 876, 882, 171 So. 2d 864, 867 (1965). "Parol evidence of the intention

of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed. ***Id.***

¶19. Turner relies upon ***Busching v.Griffin***, 542 So. 2d 860, 866 (Miss. 1989) for the proposition that where a document is unambiguous on its face, the court may not consider parol evidence which varies or contradicts the terms of the contract. In that case, Griffin and Busching entered into a purchase agreement whereby Busching had an option to purchase a tract of Griffin's land for $50,000 until December 15, 1981. ***Id.*** at 861. Griffin granted Busching several extensions and on July 8, 1983, Busching sought to exercise his option. Griffin refused to perform. ***Id.***

¶20. Busching sought specific performance in the Madison County Chancery Court. Griffin denied the agreement altogether, maintaining that Busching had merely loaned her money with which to pay taxes on the land and that she did not intend to grant him an option to purchase the land. ***Id.*** at 862. Busching recognized that Griffin had mentioned her need for money to pay the taxes on the land; however, he claimed that "I suggested to her that until we could clarify what the situation was with the land, that I advance her the money and we take some sort of an option on the land until such time as the land - the title could be cleared up on the land - which she agreed to. . . ." ***Id.*** The chancery court denied Busching's claim for specific performance, finding that the option to purchase agreement was too vague and "was simply an agreement to enter into a contract at some future date." ***Id.***

¶21. On appeal, this Court reversed, holding that the chancery court had improperly considered parol evidence. ***Id.*** at 865. This Court explained "[s]uch evidence may not be received to contradict parts of the option that are not ambiguous. The least ambiguous part of the option is that, if it were exercised, Griffin would sell Busching the property for $50,000.00." ***Id.*** Moreover, in discussing the effect of adopting a contrary rule, this Court stated, "[t]o permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." ***Id.*** (quoting ***Alliance Trust Co. v. Armstrong***, 185 Miss. 148, 186 So. 633 (1939)).

¶22. Turner claims that, as in ***Busching***, the promissory notes in the present case are unambiguous on their face and that consideration of parol evidence by the court below effectively "destroyed" them. He is correct in his assertion that the promissory notes are unambiguous. However, ***Busching*** is distinguishable in that Griffin failed to allege that Busching had defrauded her or subjected her to undue influence.

¶23. If a party alleges that his entry into a contract was procured by fraudulent representations, parol evidence may be considered in establishing the contract never came into existence. In the instant case, Terry, Henderson, and Evans alleged fraud by both Turner and Williams.

### B. FRAUD EXCEPTION

¶24. Prior to enactment of the Uniform Commercial Code as a part of our statutory law, it was a well-established principle that where fraud was alleged with respect to the formation of a written contract, the parol evidence rule would not bar consideration of a contemporaneous oral agreement. Further, Miss. Code Ann. § 75-1-103 (1972) explicitly provides that the common law principles of fraud and misrepresentation should supplement the commercial code provisions. On the basis of this background, this Court has continued to recognize the fraud exception to the parol evidence rule subsequent to the passage of Miss. Code Ann. § 75-2-202 (1972). ***Franklin v. Lovitt Equip. Co.***, 420 So. 2d 1370, 1372 (Miss.

1982).

¶25. "Parol evidence is admissible to show that the making of a written contract was procured by fraudulent representations. Evidence of this kind does not vary the written contract; it destroys and avoids it. It impeaches the written contract. Its purpose is to show that there was no valid, written contract, and a provision in a written contract that it contains all the stipulations entered into by the parties does not add anything to its strength." *Nash Miss. Valley Motor Co. v. Childress*, 156 Miss. 157, 125 So. 708, 709 (1930).

¶26. In *Holliman v. Charles L. Cherry & Assocs., Inc.*, 569 So. 2d 1139, 1146 (Miss. 1990), this Court, in refusing to reform a deed on the ground of mutual mistake, held "if mutual mistake or fraud is *properly pled*, prior oral representations/negotiations are admissible to prove the real intent of the contracting parties." (emphasis added). The rule was similarly applied in *Bedford v. Kravis*, 622 So. 2d 291, 295 (Miss. 1993) (parol evidence, in form of grantor's testimony as to the intent of the parties, subsequent leases and subsequently recorded ratification instrument, was admissible in a suit to reform the conveying document to correct a mutual mistake).

¶27. Terry and Henderson pleaded fraud, in that they alleged in their counterclaim that "Turner and Williams willfully, intentionally and in bad faith misrepresented the facts to Counterclaimant in order to induce Counterclaimant to sign the documents attached to the complaint filed herein. . . ." Evans made similar allegations. Moreover, Turner's attorney recognized that there was a fraud claim, as she stated during closing argument, "[t]here is an allegation of fraud, fraudulent inducement, that has been pled by the defendants . . . ."

¶28. The trial court found no fraud or misrepresentation on the part of Turner. The court explained,

> Based on the record, it is this Court's determination that the Defendants' argument based on fraud and misrepresentation is without merit. The Plaintiff and the Defendants relied to their detriment on the knowledge and experience of Defendant Raphael Williams. There was no evidence presented in the record to support a claim of fraud and misrepresentation.

The court went on to find that Williams had breached his fiduciary duty to the parties.

¶29. *Childress* states that parol evidence is admissible to establish fraud, in that it "does not vary the written contract; it destroys and avoids it. . . ." *Childress*, 156 Miss. at 162, 125 So. at 709. In the instant case, the trial court considered parol evidence and found that the promissory notes were invalid, as there had been no "meeting of the minds." Because the parties alleged fraud on the part of Turner, the trial court did not err in considering parol evidence.

## C. AMBIGUITY REGARDING MAKER'S CAPACITY

¶30. Some courts allow admission of parol evidence when a document is ambiguous about the capacity in which it was signed, i.e., whether the maker is personally liable. "Parol evidence is admissible in those cases in which an ambiguity is found *on the face* of the instruments regarding the capacity in which the person had signed. . . . Where the instrument itself contains nothing to indicate that it was signed in a representative capacity, parol evidence cannot be introduced to show that such was, in fact, the intent of the signer." 12 Am. Jur. 2d *Bills and Notes*, § 503 (1997). *See also* Personal Liability of Corporate Officer On Promissory Note, 8 Am. Jur. Proof of Facts 2d 193, § 6 (1976).

¶31. This Court applied the foregoing in announcing the following rule:

> It is true that, generally, extrinsic testimony is not admissible to vary or explain negotiable instruments, but one exception to the rule is that where anything appears on the face of the paper to suggest a doubt as to the party bound, or *the character in which any of the signers acted in affixing his name*, parol testimony may be admitted, as between the original parties, to show the true intent and meaning of the parties.

*Martin v. Smith*, 65 Miss. 1, 3 So. 33 (1887) (emphasis added).

¶32. Similarly, in *Harding v. Harding-Coor Co.*, 218 F. 715, 717 (S.D. Miss. 1914), the court allowed parol evidence to explain whether a promissory note was signed by the corporate manager and a corporate stockholder in their individual or representative capacities. R.J. Harding was informed by the manager and by Harding's son, a stockholder, that the company had received a consignment of flour for which immediate payment was expected. *Id.* at 716. Harding agreed to loan the company $3,000 to pay for the flour and executed a promissory note indorsed by the company's manager and the stockholder. *Id.* at 717. After the company was later adjudicated bankrupt, the trustee sought to avoid liability on the note, claiming that the loan was not an obligation of the company, as it was not made to the company but rather to the two individuals who endorsed the note. *Id.* However, though not set out explicitly in the court's opinion, it appears that the note was in fact ambiguous on its face, as the Court noted "[i]t is certainly established that this loan was made by Col. Harding to the corporation . . . ." Accordingly, the Court allowed the admission of parol evidence, recognizing,

> It is a well-settled rule of evidence that where a reading of a simple contract discloses that it is executed for or on behalf of a principal, or discloses an intention to bind such principal, or is so uncertain in its terms as to leave the whole matter in doubt whether the principal or the agent is to be bound, parol evidence is admissible to show that the principal is the real party in interest and is therefore liable on the contract.

*Id.* (quoting 31 Cyc. 1658).

¶33. Other jurisdictions similarly have held that absent some indicia of a principal/agent relationship on the face of the note, the agent attempting to avoid personal liability may not introduce parol evidence of the parties' intentions. *E.g., Federal Deposit Ins. Corp. v. Woodside Constr. Inc.*, 979 F.2d 172, 175-76 (9th Cir. 1992)(parol evidence of intent to sign in corporate capacity was inadmissible where first signature above principal designation failed to indicate representative capacity, and second signature above representative capacity designation failed to indicate principal); *Tampa Bay Econ. Dev. Corp. v. Edman*, 598 So. 2d 172, 174 (Fla. Dist. Ct. App. 1992) (parol evidence admissible where the language "[f]or value received, the undersigned jointly and severally promise to pay to the order of [TEDCO]," established that more than one person or entity was to be liable on the note and where the signature block did not contain any reference to the corporation); *Hartford Acc. & Indem. Co. v. Louisiana Minority, Inc.*, 522 So. 2d 1154, 1156 (La. Ct. App. 1988) (parol evidence inadmissible to deny personal liability where signature contained no language limiting personal liability or indicating that signing only in the capacity as a director of the corporation); *Kroll v. Crest Plastics, Inc.*, 369 N.W.2d 487, 490 (Mich. Ct. App. 1985) (trial court may consider parol evidence in establishing personal liability, despite fact that promissory note has been signed in what appears to be representative capacity); *International House of Talent, Inc. v. Alabama*,

712 S.W.2d 78, 86-87 (Tenn. 1986) (parol evidence admissible where instrument ambiguous on its face).

¶34. In the instant case, the notes are unambiguous on their faces. They contain no indication that they are extended to the corporation rather than to the individual stockholders whose names appear as the "makers" of the notes. Parol evidence is inadmissible under this rule. However, since we find that parol evidence was properly admitted under the fraud exception, discussed *supra*, this error is harmless.

### D. EFFECT OF FAILURE TO READ THE PROMISSORY NOTES

¶35. Turner contends that the makers' failure to read the promissory notes before signing them precluded the trial court from granting them any relief. He relies upon ***Alliance Trust Co., v. Armstrong***, 185 Miss. 148, 186 So. 633, 635 (1939) where this Court held "[t]o permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts."

¶36. It is true that as a general proposition, equity will not act to rescind a contract where the mistake was induced by the negligence of the party seeking rescission. Furthermore, parties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence. ***Godfrey, Bassett,& Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,*** 584 So. 2d 1254, 1259 (Miss. 1991). There is, however, an exception to this rule:

> Where one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him. Thus, failure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party. This equitable rule applies whether rescission is sought under a fraud theory or a mistake theory.

*Id.* Moreover, Section 157 of the Restatement (Second) Contracts (1981) states that a person otherwise entitled to relief is not necessarily barred therefrom because of negligence in failing to read the contract: "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing."

¶37. Based upon the aforementioned authority, the parties' failure to read the documents bar them from seeking relief. Though they *alleged* fraud on the part of Turner, they failed to prove it. Since they failed to prove fraud, it was error for the trial court to refuse to enforce the contracts.

### E. JOINT VENTURERS

¶38. Terry, Henderson and Evans assert that they, along with Williams and Dockins, entered into a joint venture with Turner for the express purpose of forming First Commerce and acquiring the assets of State Mutual Federal Savings and Loan Association from the Resolution Trust Corporation. They maintain that "[j]oint venturers are not liable to each other for repayment of funds advanced by one for use in the joint venture."

¶39. This Court has recognized that "[j]oint adventurers are not liable to each other for repayment at all events for money advanced for use in the joint adventure, in the absence of waiver or estoppel, although a member is entitled to contribution or reimbursement for all expenditures made in the ordinary course of the

affairs of the enterprise." ***Boxwell v. Champagne***, 229 Miss. 355, 366, 91 So.2d 256, 261 (1956). A joint venture might be characterized as a "single shot partnership." ***Hults v. Tillman***, 480 So. 2d, 1134, 1143 (Miss. 1985). It is a business relationship used for a specific undertaking for profit as opposed to a general, ongoing business. ***Allied Steel Corp. v. Cooper***, 607 So. 2d 113, 117 (Miss. 1992).

¶40. First Commerce cannot be considered a "joint venture." To classify a corporation as a joint venture would be incongruous. "A corporate entity is not its incorporators or shareholders; it is not a partnership or joint venture; it is, rather, another and particular kind of creature, with its own rights and duties." ***Hospital Prods., Inc. v. Sterile Design, Inc.***, 734 F. Supp. 896, 907 (E.D. Mo. 1990), *aff'd mem.,* 923 F.2d 859 (8th Cir. 1990). Moreover, First Commerce was not a "single shot partnership." The parties contemplated an ongoing business, specifically, a savings and loan. This argument is meritless.

### F. EQUITABLE ESTOPPEL

¶41. Terry, Henderson, and Evans further claim that Turner is equitably estopped from seeking to enforce the promissory notes. They argue that it would be unfair to allow Turner to recover under the promissory notes after he induced them to sign the notes by representing that he would seek repayment from the sale of future stock and not from them personally.

¶42. A party asserting equitable estoppel must show (1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct. ***PMZ Oil Co. v. Lucroy***, 449 So. 2d 201, 206 (Miss. 1984). This Court has explained equitable estoppel as follows:

> In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done, and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of equitable estoppel is not applied except when to refuse it would be inequitable. The law does not regard estoppels with favor, nor extend them beyond the requirements of the transaction in which they originate.

*Id.* (quoting ***McLearn v. Hill***, 177 N.E. 617 (Mass. 1931)). The essential elements of equitable estoppel are conduct and acts, language or silence, amounting to a misrepresentation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that the representation or silence or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. ***Cain v. Robinson***, 523 So. 2d 29, 34 (Miss. 1988).

¶43. In the instant case, Turner did not conceal anything. The promissory notes, if they had been read, clearly provided that the directors were signing them in their individual capacities. The doctrine of equitable estoppel is not favored and should only be applied when equity clearly requires it. ***Bright v. Michel***, 242 Miss. 738, 750, 137 So. 2d 155, 159 (1962). In light of this clearly established case law, we do not find it appropriate to hold Turner equitably estopped from enforcing the promissary notes.

### II. WHETHER THE TRIAL COURT COMMITTED ERROR AS A MATTER OF LAW IN FAILING TO AWARD ATTORNEYS' FEES PURSUANT TO THE TERMS OF THE PROMISSORY NOTE EXECUTED BY EACH DEFENDANT

¶44. The trial judge found that Turner was entitled to attorneys' fees from Williams only and thus awarded

Turner one-fourth of his total attorneys' fees. Turner alleges that the trial court should have awarded him the entirety of his attorneys' fees based upon the language of the contracts. Alternatively, Turner maintains that the pledge and security agreement, which the trial court upheld, provides for attorney's fees. Turner contends the trial court erred in failing to award attorneys' fees under the pledge and security agreement, which provides:

Section 10. Indemnity and Expenses

(A) The Pledgor agrees to indemnify Turner from and against any and all claim, losses and liabilities growing out of or resulting from this Agreement (including, without limitation, enforcement of this Agreement), except claims, losses or liabilities resulting solely and directly from Turner's gross negligence or willful misconduct.

(B) The Pledgor will upon demand pay to Turner the amount of any and all cost and expenses, including the . . . disbursements of Turner's counsel and of any experts and agents, which Turner may incur in connection with (i) the administration of the Agreement; (ii) the custody preservation, use or operation of, or the sale of, or enforcement of any of the rights of Turner hereunder; (iv) the failure by the Pledgor to perform any of the provisions hereof, except expenses resulting solely and directly from Turner's gross negligence or willful misconduct.

¶45. The standard of review of the circuit court's decision to grant costs and attorney fees is abuse of discretion. *Bank of Miss. v. Southern Mem'l Park, Inc.*, 677 So. 2d 186, 191 (Miss.1996). The general rule prohibits an award of attorneys' fees absent a relevant contractual provision or statutory authority, or unless punitive damages are granted. *Stokes v. Board of Directors of La Cav Imp. Co.*, 654 So. 2d 524, 529 (Miss. 1995).

¶46. Because we find the trial court erred by invalidating the promissory notes, we also find that Turner is entitled to all attorneys' fees resulting from this litigation, as a plain reading of the contract provides. Additionally, Turner's claim to attorneys' fees is further bolstered by the language in the pledge and security agreement, which the trial court upheld. It was an abuse of the trial court's discretion to deny Turner a full award of attorneys' fees.

### III. WHETHER THE TRIAL COURT APPLIED AN INCORRECT LEGAL ANALYSIS TO CORNELIUS TURNER'S CLAIM FOR PAYMENT UNDER THE PROMISSORY NOTES

### CROSS - APPEAL

### I. WHETHER THE TRIAL COURT ERRED IN AWARDING THE STOCK TO TURNER

¶47. Turner contends that the trial court erred in finding that the promissory notes were unenforceable while at the same time ordering Terry, Evans and Henderson to transfer their stock to him. He maintains that he is entitled to either the money he is owed *or* to the stock. Because he sought to recover the money he was owed rather than foreclose on the stock, Turner claims the trial court abused its discretion in awarding him the stock.

¶48. Terry, Henderson, and Evans, in their pro-forma cross-appeal, essentially agree that Turner had the right to elect his remedy. However, they allege that because Turner did not seek to foreclose his security

interest in the stock, the trial court erred in ordering them to transfer their stock to Turner.

¶49. Turner relies upon ***Rea v. O'Bannon***, 171 Miss. 824, 158 So. 916, 918 (1935), wherein this Court held that the holder of a promissory note may elect his remedy:

> There is no inconsistency in the two remedies here available to Rea, receiver. He could pursue the foreclosure to conclusion, or, if he deemed it advantageous to himself, he could forego the foreclosure and proceed at law to collect his debt in the law forum. . . . There is no inconsistency between the legal and equitable remedial rights possessed by a mortgagee in case of a breach, and he may exercise them all at the same time, and resort to one is not a waiver of the other.

Turner contends that because he chose to sue on the notes in lieu of foreclosure, the trial court erred in awarding a transfer of stock. A trial judge may award a party any relief to which he is entitled, even if the party fails to make a specific demand for such. Mississippi Rule of Civil Procedure 54(c) provides:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings; however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings.

¶50. The circuit court had before it the information necessary to fashion a remedy in the form of awarding stock to the aggrieved party. Under this peculiar set of facts, the trial judge found that the security for the promissory note was an adequate remedy at law for Turner. Vested with broad discretion, this Court cannot say that the trial court erred in ordering a transfer of the stock, as said remedy is one that easily falls within its wide discretionary powers.

## CONCLUSION

¶51. The parol evidence admitted at trial regarding the parties' discussions about repayment of the Resolution Trust Corporation loan did not meet the required standard to prove the allegations of fraud that Terry, Henderson and Evans pled in their original complaint. Because they were unable to prove their allegation of fraudulent behavior, the trial judge erred by refusing to enforce the contracts against Terry, Henderson and Evans. Since we hold the contracts valid and enforceable, we also hold that Turner, according to the terms of said contracts, is entitled to all attorneys' fees resulting from this litigation. Finally, we affirm the trial judge's award of stock in this case as an adequate remedy at law. For these reasons, we affirm in part and reverse in part the judgment of the Hinds County Circuit Court and we remand this case to that court for an award of Turner's attorneys' fees against Terry, Henderson, and Evans.

¶52. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

> **PITTMAN, C.J., AND SMITH, MILLS, COBB AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. BANKS, P.J., AND WALLER, J., NOT PARTICIPATING.**

1. At some point, First Commerce merged with First American. Williams testified that the parties now own stock in First American.