BARNES, J., for the Court.
¶ 1. After a jury trial in the Quitman County Circuit Court, the plaintiff, Lambert Community Housing Group, L.P. (Lambert Housing), was awarded a judgment against defendant Wenzel and Associates, P.A. (Wenzel P.A.). However, the verdict form did not include a space for apportioning fault against another named defendant, architect William Wenzel, individually (William Wenzel). Accordingly, Lambert Housing appeals the final judgment of the Quitman County Circuit Court, which adjudged that Lambert Housing could recover from Wenzel P.A. its portion of the judgment, but dismissed with prejudice all claims against William Wenzel, individually. Finding error with the circuit court’s judgment, we reverse and remand for a new trial in order to determine what portion of fault, if any, may be attributable to William Wenzel, individually.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. In 1994, Lambert Housing was formed to build a multi-unit low-income housing development in Lambert, Mississippi.[1] Wenzel P.A. contracted to perform “comprehensive architectural services” for the project, including periodic visits to the project site to determine if the work was being performed in accordance with the contract documents. William Wenzel, as *470 president of Wenzel P.A., executed the American Institute of Architects’ (AIA) form contract on the firm’s behalf. The pleadings establish that William Wenzel, a registered professional architect, was assigned by Wenzel P.A. to render professional services to the project and was the one who “principally” performed the “comprehensive professional services” for the project on behalf of Wenzel P.A.
¶ 3. The contract provided that the “Architect,” Wenzel P.A., would visit the site at intervals to become familiar with the progress and quality of the work and to determine generally whether the work was being completed in accordance with the contract documents. Based on these observations, the Architect would review and certify the amounts due to the general contractor, Quality Construction, Inc.[2] The certification constituted a representation to the owner that the work “ha[d] progressed to the point indicated and that, to the best of the Architect’s knowledge, information and belief, [the] quality of the [w]ork [w]as in accordance with the [c]on-tract [djocuments.” William Wenzel testified that under the contract, he had the authority to revoke prior payment applications that he had approved for improperly performed work. He testified that from 1995 through 1996, he made approximately twelve scheduled field visits to the site. John Lad, an employee with his architectural firm, had accompanied him on two occasions. Raymond Barker, Wenzel P.A.’s engineer, also made several visits to the site. The testimony conflicted as to whether William Wenzel “quit” the project or was locked off the job site in May to October 1996. However, by April 1, 1996, William Wenzel had certified payment of $1,573,353 of the $2,115,715 contract sum. He testified that the project was 80% complete, and 74.34% of the payments had been certified for payment, leaving a re-tainage of 5.66%. Thereafter, in August 1997, Lambert Housing sued several defendants, including Wenzel P.A. and William Wenzel, individually.[3] Lambert Housing claimed that William Wenzel and Wenzel P.A. breached their duties by failing to identify and advise it of defective and non-conforming work of the general contractor and other named defendants involved in the project. Lambert Housing also claimed that William Wenzel and Wenzel P.A. made several negligent or fraudulent misrepresentations about the completion and quality of the project. Lambert Housing claimed to have suffered damages in the amount of $2,019,350.
¶ 4. According to the record, William Wenzel was never dismissed from the case and was listed as a named defendant throughout the proceedings. In March 2006, a jury trial was held in the Quitman County Circuit Court. Throughout the portion of the transcribed proceedings that was provided to us,[4] William Wenzel testified as to his level of involvement in the project; he admitted that he was the “sole judge” as to whether or not payment applications would be certified for payment. Derrick Neal testified about the business *471 background of the venture and William Wenzel’s level of involvement. After testimony concluded, jury instructions were compiled. The circuit court granted jury instruction P-100, the form of the verdict, which enumerated various claims against the defendants. The jury instruction began as follows:
1. If you find that Wenzel breached its contract with the Owner the form of your verdict shall be....
2. If you find that Wenzel negligently certified application for payment by representing that the project had achieved certain designated level of completion in accordance with the contract documents which, in fact, it had not, or that the project was being completed in a professional, workmanlike and orderly manner which, in fact, it had not then the form of your verdict shall be....
(Emphasis added.) The jury found no compensatory damages for the breach of contract claim but awarded a verdict in favor of Lambert Housing for the negligence claim, awarding $1,949,932.85 in compensatory damages.
¶ 5. Instruction P-100 continued, stating that if the jury found by a preponderance of the evidence that there was more than one actor in the case responsible for the alleged damages, they were to apportion fault accordingly. An apportionment form was contained in the instruction, stating: “[sjhould you find by a preponderance of the evidence that Lambert Community Housing Group, L.P. was injured due to negligence you should apportion the award among the following actors by percentage of their respective fault, if any....” The actors were listed as follows:
1. Wenzel and Associates, P.A. _
2. Quality Construction, Inc. _
3. Ellis Adams _
4. Sammy Thompson _
5. Air Electric, Inc. _
6. Mid-South Development, Inc. _
The verdict form did not provide a space for apportioning fault to William Wenzel, individually. The jury apportioned fault to: Wenzel and Associates, P.A., 33.3%; Quality Construction, Inc., 33.4%; and Mid-South Development, Inc. 33.3%.
¶ 6. On May 23, 2006, a hearing was held regarding the jury’s apportionment of compensatory damages and the fact that William Wenzel was not included in his individual capacity. The circuit judge noted the conflict created by the use of the term “Wenzel” on the first page of jury instruction P-100 and Wenzel P.A. on the second page of the instruction in the apportionment form and deemed the result a “quagmire.” The court further noted that no objection was made to the jury instruction at issue or the form of the apportionment. By affidavit, defense attorney Robert Tyner explained that the parties had worked together to draft a form of the verdict jury instruction, which was prepared at trial by the legal assistant of the plaintiffs attorney. When Tyner asked about including Neal on the form, plaintiffs counsel advised him that since they were not listing any other individuals in the form of the verdict, including William Wenzel, individually, Neal should not be listed either.[5] The Wenzel defendants therefore argued that Lambert Housing had made a “conscious and deliberate decision not to put Wenzel individually on there.” Adam Stone, one of the attorneys for Lambert Housing, represented at the hearing (and later confirmed by affidavit) that the parties agreed not to list the *472 individuals separately from the corporate entities in order to avoid confusing the jury. Stone stated that there was never an agreement to release any individuals from the case; he contended that at all times it was understood that the liability of William Wenzel was joint and several with Wenzel P.A.’s liability. Subsequently, the parties submitted letter briefs on contract interpretations as requested by the circuit court. In June 2006, the court entered a “final” judgment against Wenzel P.A. for 33.3% of the total judgment, or $643,477.84.[6]
¶ 7. Aggrieved by the June 2006 decision of the circuit court, which did not state whether damages were recoverable against William Wenzel, individually, Lambert Housing appealed to the Mississippi Supreme Court. William Wenzel filed a motion to dismiss Lambert Housing’s appeal. In November 2006, the supreme court dismissed Lambert Housing’s appeal and William Wenzel’s motion to dismiss because the June 2006 order of the circuit court did not resolve all claims against all parties; specifically, the judgment did not resolve claims against William Wenzel, individually. Thereafter, Lambert Housing filed a motion for final judgment, requesting the circuit court resolve all claims against all parties and adjudge William Wenzel jointly and severally liable for the $643,477.84 judgment against Wenzel P.A. In the alternative, Lambert Housing noted it had previously moved for a directed verdict or a judgment notwithstanding the verdict, arguing that William Wenzel was jointly and severally liable with Wenzel P.A. On December 4, 2006, the circuit court entered a final judgment on the jury verdict, awarding damages against Wenzel P.A. and dismissing with prejudice “[a]ll claims against all other parties, including all claims against William H. Wenzel, individually.” Lambert Housing appeals this judgment, raising one issue: whether the circuit court erred in its refusal to enter a judgment against William Wenzel, individually.[7]
ANALYSIS
¶ 8. Lambert Housing makes several arguments in support of its contention that the circuit court erred in failing to enter a judgment against William Wenzel, individually. Lambert Housing contends that we should render a decision whereby William Wenzel is individually liable for the entire portion of fault attributed to Wenzel P.A. William Wenzel, in response, argues that he is not responsible for any portion of the fault attributed by the jury to Wenzel P.A., and we should affirm his dismissal with prejudice. We find that neither result is appropriate under the circumstances of this case.
1. “Clear Intent ” of the Jury.
¶ 9. Lambert Housing contends that the circuit court’s decision is contrary to the jury verdict, as “the jury clearly found that William Wenzel acted negligently.” Conversely, William Wenzel argues that “the jury’s decision was clear and unambiguous” that the liability of ‘Wenzel” refers only to Wenzel P.A. Specifically, Lambert Housing argues that it is clear from the jury’s finding on the P-100 form of the verdict that William Wenzel was individually negligent, as the instruc *473 tion on the various claims mentions merely “Wenzel” without any corporate designation. Lambert Housing further argues that the apportionment of liability to Wen-zel P.A. was based entirely on the negligence of William Wenzel, individually, since the evidence presented at trial shows William Wenzel’s direct actions were the basis for the jury’s finding of liability. Lambert Housing points to the admission of William Wenzel that he was the “sole judge” of payment certification and the fact that he signed the certifications in his individual, rather than corporate, capacity. William Wenzel counters that the term ‘Wenzel” in the form of the verdict is “only linked” to Wenzel P.A. in the apportionment of fault, and the jury was never asked to consider the individual liability of William Wenzel. He points to the use of the word “its” instead of “his” in the contract portion of P-100 as indicative that the term “Wenzel” referred to the corporate entity only. We reject these contentions and find, as the circuit court did, ambiguity in the jury’s verdict of negligence.
¶ 10. Lambert Housing cites in support of its argument Hobbs Automotive, Inc. v. Dorsey, 914 So.2d 148 (Miss.2005), wherein the Mississippi Supreme Court affirmed reformation of the verdict by the trial judge where the jury verdict merely stated the plaintiffs were entitled to “$100,000 for fraud.” Id. at 152 (¶¶ 15-16). However, Hobbs is distinguishable from this case. In Hobbs, the intent of the jury to find liability against the defendant was clear as there was only one defendant. Here, the jury’s findings as to negligence were unclear as the jury neither was instructed as to the definition of the term “Wenzel” nor as to the apportioning of liability to one of the named defendants, William Wenzel.
¶ 11. Lambert Housing formulates its argument, in part, based on contract law, questioning whether or not William Wen-zel was acting in a representative or individual capacity when he signed the payment certification, with the answer to that question being determinative of whether or not he was individually subject to the jury’s award of damages. Lambert Housing cites the rule that when an instrument contains nothing to indicate it was signed in a representative capacity, parole evidence cannot be introduced to indicate the intent of the signer. See Turner v. Terry, 799 So.2d 25, 34(¶ 30) (Miss.2001) (citing 12 Am.Jur.2d, Bills and Notes, § 503 (1997)). Thus, if there is nothing in the document to indicate an individual is acting in a representative capacity, that person is individually liable. Lambert Housing contends William Wenzel did not sign the application payments in a representative capacity. We disagree.
¶ 12. In analyzing the record, we find that certifications of payment were made on AIA form document G702. On the top of the form, in each instance, beside the term “Architect” was written “Wenzel & Associates, P.A. Architects” with the firm’s address stated. Then, the first line of the signature block contained the word “Architect” and the next line had “By:” and a space for a signature. While only one of the forms had “Wenzel & Associates, P.A. Architects” rewritten at the bottom after the term “Architect,” we find that the term “Architect” was already defined at the top of the form. Therefore, it was unnecessary to rewrite Wenzel & Associates, P.A. at the bottom of the form above the signature. Therefore, we are not persuaded by Lambert Housing’s argument that William Wenzel signed these forms solely in his individual capacity and not on behalf of the architectural firm.
¶ 13. As to Lambert Housing’s argument that the jury based Wenzel P.A.’s liability entirely on William Wenzel’s negli- *474 genee, we find instances in the portions of the trial transcript that were provided which show the involvement of other members of his architectural firm, who inspected the project or otherwise monitored its progress. William Wenzel testified that in the course of his twelve scheduled visits to the site, an employee from his firm, Lad, accompanied him on two occasions; additionally, the record reflects that the firm engineer, Barker, made several visits to the site. It is not apparent from the record the level of involvement these individuals had with the project. While William Wenzel admitted that he was the “sole judge” regarding certification of payments, the record does not reflect whether, or to what extent, he may have relied upon the information supplied to him by Lad or Barker in making those determinations. We cannot, on the record before us, find as a matter of law that the jury apportioned liability to Wenzel P.A. based entirely on the negligence of William Wenzel.
¶ 14. To the extent that Lambert Housing contends, based on its analogy to contract law, that the absence of a corporate designation after the term “Wenzel” in P-100 “clearly” references William Wenzel, we reject that contention. The term “Wenzel” was never defined for the jury, and we cannot presume that the jury interpreted the term to mean William Wenzel, individually. We similarly reject William Wenzel’s contention that “Wenzel” refers to Wenzel P.A. based on the use of the word “its” rather than “his” in the contract portion of P-100. We note that the general jury instruction on negligence, P-35, referred to “Wenzel” as “his.”[8]
¶ 15. We find, as the circuit court did, that use of the term “Wenzel” in the form of the verdict is in conflict with the use of “Wenzel and Associates, P.A.” in the apportionment of fault. Accordingly, we reject the arguments of both parties that the issue is “clear.”

2. Ambiguity of the Jury Verdict.

¶ 16. Lambert Housing argues that the circuit court erred in not resolving the jury verdict’s ambiguity. Lambert Housing contends that the circuit court could have resolved that ambiguity by requiring the jury to return an unambiguous verdict or applying the doctrine of ejus-dem generis. Lambert Housing relies upon Mississippi Code Annotated section 11-7-161 (Rev.2004), which provides that “[i]f the verdict is not responsive to the issue submitted to the jury, the court shall call their attention thereto and send them back for further deliberation.”
¶ 17. Lambert Housing further cites Adams v. Green, 474 So.2d 577 (Miss.1985) for the proposition that despite the appellant’s failure to request the jury be returned to reword their ambiguous verdict, “the responsibility and duty” is placed “squarely on the shoulders of the trial judge to, on [his or her] own motion, order the jury to return to the jury room to reform and reword their verdict.” Id. at 581. In our case, there is no indication that the ambiguity was brought to the circuit judge’s attention prior to his releasing the jury. William Wenzel has not tried to distinguish Adams, and we find it analogous to the instant case. While it is disingenuous for Lambert Housing to blame the circuit court for not correcting *475 the ambiguity the parties engrafted into jury instruction P-100, we must follow supreme court precedent that the ultimate burden is on the circuit court to resolve the ambiguity.
¶ 18. As the jury had already been released at the time the ambiguity was noted, Lambert Housing contends that the circuit court should have applied the doctrine of ejusdem generis to resolve any ambiguity in its favor.[9] Lambert Housing argues that the jury’s finding that “Wen-zel” “negligently certified applications for payment” is a detailed finding of fault as the only evidence was that William Wenzel was the sole individual responsible for the certifications and should control over the non-specific apportionment form which “simply provided a space for the jury to apportion percentages” and “was to be used in conjunction with any of the jury instructions.”
¶ 19. Lambert Housing has cited no authority wherein the doctrine of ejusdem generis has been used in such a manner, and we agree with William Wenzel’s contention that it is incongruent to apply the doctrine to construe the jury verdict and apportionment of fault in this case.[10] However, we reject William Wenzel’s argument that because Lambert Housing did not object, and in fact prepared the apportionment form which failed to list his name individually, that Lambert Housing cannot raise the error on appeal, and it is “too late” to correct any error.
¶20. We find Adams instructive. In Adams, the jury returned a verdict in favor of two defendants, but remained silent as to the third defendant. Adams, 474 So.2d at 581. The appellant never instructed the jury to find against the defendant individually. Id. at 580. The supreme court held that the trial court erred in failing to require the jury to render a verdict against a named defendant, in her individual capacity, where the evidence submitted at trial supported her liability. The supreme court remanded the case as to the third defendant to determine liability, if any. Id. at 581.
¶ 21. As stated previously, the instruction paired with the verdict form is in conflict and thus ambiguous. Throughout the pleadings filed with the circuit court, the usage of “Wenzel” by Lambert Housing and the defendants varies in meaning.[11] This inconsistency carries over to the drafting of the jury instructions as well. Throughout the jury instructions the term Wenzel” is used, but the term is rarely specifically defined by either parties’ instructions.[12] We cannot determine from *476 the record whether the term “Wenzel” used in the jury instruction refers to William Wenzel, individually, or Wenzel P.A. For this reason, we find the circuit court erred in dismissing William Wenzel from the cause without requiring the jury to determine if he would be assessed any portion of fault individually. Therefore, the proper course of action, as indicated in Adams, is to reverse and remand for a new trial in order to determine what portion of Wenzel P.A.’s judgment, if any, is attributable to William Wenzel, individually.

3. Motion for Directed Verdict or JNOV.

¶ 22. Finally, Lambert Housing contends it is entitled to a directed verdict or JNOV against William Wenzel, individually, based on the Mississippi Professional Corporation Act (“MPCA”), codified at Mississippi Code Annotated sections 79-10-1 to -117. Our standard of review is the same for both motions:
“This Court will consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence.” If the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render. On the other hand, if substantial evidence exists in support of the verdict, that is, “evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions,” then this Court must affirm.
Harrah’s Vicksburg Corp. v. Pennebaker, 812 So.2d 163, 170(¶28) (Miss.2001) (internal citations omitted).
¶23. Lambert Housing contends that William Wenzel is entirely responsible for Wenzel P.A.’s liability pursuant to Mississippi Code Annotated section 79-10-67(1) (Rev.2001). This code section states, in pertinent part, that “[e]ach individual who renders professional services as an employee of a domestic ... professional corporation is liable for a negligent or wrongful act or omission in which he personally participates to the same extent as if he rendered the services as a sole practitioner.” Id.
¶ 24. As stated previously, we find that the portions of the record provided to us indicate the involvement of other members of the Wenzel P.A. architectural firm in the project. While William Wenzel admitted that he was the “sole judge” regarding certification of payments, the record does not reflect whether or to what extent he may have relied upon information supplied to him by Lad or Barker in making that determination. Lambert Housing cites as its only authority, other than the MPCA, Carl J. Battaglia, M.D., P.A. v. Alexander, 177 S.W.3d 893, 903 (Tex.2005) for the proposition that the jury should only be asked whether the professional was negligent and “the consequences to the professional associations follow as a matter of law.” William Wenzel responds, and we agree, that the reverse of Battaglia is not necessarily true despite Lambert Housing’s assertion. To hold otherwise, could impose a disproportionate share of liability to an employee of a professional association if that employee only was responsible for a small share of the alleged negligence involved. In this case, we cannot, as a matter of law, determine that the entire liability is attributable to the professional errors of William Wenzel. Moreover, in order to reverse and render the circuit *477 court’s decision on sufficiency of the evidence, this Court would need to review the entire transcript of the trial proceedings, which has not been provided.
CONCLUSION
¶ 25. We find the form of the jury’s verdict and apportionment of fault contained in instruction P-100 ambiguous. Even though neither party objected to its form, the circuit judge erred in not ordering the jury to return for deliberations in order to reform its verdict and to determine the individual liability of William Wenzel as there was evidence submitted at trial supporting some liability on his part. For this reason, we find the circuit court erred in dismissing William Wenzel from the case with prejudice. In accordance with Adams, we reverse and remand for a new trial in order to determine what portion, if any, of Wenzel P.A.’s liability may be apportioned to William Wenzel, individually.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL IN ACCORDANCE WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Initially, Lambert Housing was owned by two partners, Mid-South Development, Inc. (Mid-South), and WNC and Associates (WNC). WNC was to finance the project, and Mid-South was responsible for its development. However, at some point, Mid-South ceased being a partner; thus, WNC became the sole owner of Lambert Housing.

. Quality Construction, Inc. entered into a contract in 1994 as a general contractor to Lambert Housing, furnishing all labor and materials, but left the project in 1996.

. Other named defendants, including Quality Construction, Inc., and various subcontractors, were sued for breach of contract.

. Lambert Housing chose not to designate the entire transcript of the multi-day trial to this Court. Instead, we were only provided testimony from two witnesses, Derrick Neal, former president of Mid-South, and William Wenzel. Additionally, we received a partial transcription of the jury-instruction conference. The hearing dated May 23, 2006, regarding the issue on appeal, was transcribed in its entirety.

. We note, however, that William Wenzel was the only defendant associated with a corporation or business which was individually named in the action; neither Neal nor Mid-South were named as defendants in the action.

. Subsequently, in August 2006, Wenzel P.A. notified the circuit court that the firm had filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code.

. William Wenzel notes in his brief to this Court that Wenzel P.A., having filed for protection under the bankruptcy code, could not perfect an appeal without posting bond and moving to lift the automatic stay; thus, he represents that “economics” prevented Wen-zel P.A. from appealing the judgment against the firm.

. Instruction P-35 provided: “that if [the jury] find[s] from a preponderance of the credible evidence that the damage that is complained of by plaintiff Lambert was caused by or resulted from the neglect of Wenzel to exercise ordinary skill and diligence in the performance of his contract and/or professional duties, then it is [the jury's] sworn duty as jurors to return [a] verdict in favor of Lambert.” (Emphasis added.)

. The ejusdem generis rule, in the construction of laws, wills, and other instruments, states that general words, when followed by more specific words, will not be construed to the widest extent, but will refer only to those persons or things specifically mentioned. Black’s Law Dictionary, 517 (6th ed.1990). In other words, specific provisions control over general provisions. See Yazoo Properties v. Katz & Besthoff Number 284, Inc., 644 So.2d 429, 432 (Miss.1994). This rule only applies when the instrument is ambiguous. Id.

. We, therefore, do not address whether we would adopt Lambert Housing’s contention that the finding of liability against "Wenzel” is more specific than the apportionment of fault against Wenzel P.A.

. For example, Wenzel P.A.’s and William Wenzel’s pleadings usually use the term "Wenzel” to refer to both defendants; in Lambert Housing’s and WNC’s pleadings "Wenzel” refers to William Wenzel, individually, only.

. For example, the following granted jury instructions refer merely to “Wenzel” without defining the term: P-5, P-9, P-35, DW-11, DW-12, DW-17, DW-18. Jury instruction DW-7 does define "Wenzel” as Wenzel, P.A. Additionally, while the jury instruction on negligence P-35 refers to Wenzel’s perform- *476 anee as “his,” the form of the verdict (P-100) refers to Wenzel’s breach of contract as "its.”