IRVING, P.J.,
dissenting:
¶ 35. I disagree with the majority’s conclusion that the Bank was entitled to summary judgment on Tammy’s breach-of-contract claim. Therefore, I dissent. I would reverse the circuit court’s judgment and remand this case for a trial on the merits.
¶ 36. I agree with the majority that Tammy is a party to the deposit contracts covering the CDs and that the contracts between the Bank, Tammy, and Ronnie are unambiguous. I also agree that Tammy’s rights pursuant to those contracts were limited as a result of her failure to sign the signature card. However, I cannot agree with the majority’s interpretation of the contracts and the consequences that flow therefrom.

A. Breach of Contract

1. Presentment

¶ 37. Using Epperson as its guide, the majority concludes that the provision “You must present this certificate when you request a withdrawal or a transfer” allows the Bank to exercise its discretion when determining whether presentment is necessary. In my opinion, that conclusion is not only contrary to a finding that the CDs are unambiguous, but it is also contrary to our supreme court’s statement in Epper-son that “[i]f the contract is unambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract!.]” Epperson v. SOUTH-Bank, 93 So.3d 10, 16 (¶ 17) (Miss.2012) (quoting Turner v. Terry, 799 So.2d 25, 32 (¶ 16) (Miss.2001)) (internal quotation marks omitted).
¶ 38. The contracts do not state that a depositor may be required to present the certificates prior to a transfer or withdrawal, and there is no additional language in the contracts governing the CDs similar to the provision in Epperson — that the Bank may require presentment. Through use of the term “must,” the contracts require presentment prior to a withdrawal or a transfer and prevent the depositor from doing either without first presenting the certificates to the Bank. By allowing Ronnie to transfer the CDs without first requiring that he present the CDs, the Bank operated in clear contradiction to the wording of the contract, and, consequently breached its contractual obligation to Tammy as a co-depositor.
¶ 39. Citing 13 Williston on Contracts § 39:17 and quoting Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 837 (¶ 23) (Miss.2003), the majority states that “a party may voluntarily waive a contractual condition that has been inserted for his benefit.... ‘It is simple contract law that a party may waive the protections of any provision of a contract.’” Maj. Op. at (¶ 21). While this is generally true, the problem here is that there are three parties to the contract: Tammy, Ronnie, and the Bank. While the provision regarding presentment may be primarily for the Bank’s protection, it cannot be legitimately argued that it does not also provide protection for a depositor not requesting a withdrawal or transfer, as was the case here, in a multi-depositor situation where only one depositor requests a transfer. After all, are not all parties to a contract entitled to the benefit of all contractual provisions, unless otherwise specified in the contract? If the Bank were going to waive the requirement of presentment, it had to do so with all parties being informed. Clearly, Ronnie was informed, as he was the one seeking the transfer without first presenting the CDs. Since Tammy, a depositor, *406 was not present, the Bank was required to give her notice even though it would not have been required to do so had she been with Ronnie when he requested the transfer. The fact that Tammy had other ways, of which she did not take advantage, of protecting her interest does not mean that she forfeited the protections afforded by the plain wording of the contracts governing the CDs.

2. Notice

¶40. Tammy’s rights pursuant to the CDs were only limited in that she could neither withdraw the funds from the CDs nor transfer them because she had not signed the signature cards. I believe that the majority errs, however, in determining that, despite Tammy’s status as a party to the contracts, she was not entitled to notice, as the Bank did not change any of the terms of the contracts governing the CDs. See Maj. Op. at (¶ 24).
¶ 41. A “term” is a provision that defines a contract’s scope, its conditions, or its stipulations. See Black’s Law Dictionary 1510 (8th ed.2004). As stated, the contract language governing the CDs is unambiguous. Therefore, the terms of the CD contracts governing the transfer and the conditions required for a transfer, including presentment, limited the operational scope of the Bank in dealing with the CDs. While the contracts governing the CDs state that the Bank “may change any term of [the] agreement,” the contracts also obligate the Bank to “give [the depositors] reasonable notice” of the changes, except as to changes involving interest rates. To find that the Bank did not violate the terms of the agreements when it failed to require Ronnie to present the original CDs prior to the transfer is to also find either that the contractual provisions governing presentment and transfer are ambiguous or that the Bank changed the terms of the agreements to permit a transfer without presentment. It is undisputed that the Bank did not give Tammy any notice of any changes being made to the terms concerning the transfer of the CDs, and the Bank did not provide any evidence that she, as a party to the contract, was not entitled to notice.
¶ 42. While I do not dispute that Ronnie had the sole right, as a result of his signing the signature card, to transfer or withdraw the funds in the CDs, the Bank has failed to present any evidence that Tammy, as a result of not signing the signature card, was not entitled to the notice that she was assured under the terms of the contracts governing the CDs. Accordingly, the Bank was not entitled to summary judgment, as it did not demonstrate that it had not breached any of the terms of the contracts governing the CDs.

B. Statute of Limitations

¶ 43. Both sides agreed that, normally, breach-of-eontract claims are subject to the three-year statute of limitations outlined in Mississippi Code Annotated section 15-1^49(1) (Rev.2012). Although the majority chooses not to address this issue on the merits, I feel the need to do so, for if the Bank’s contention with respect to the running of the statute of limitations has merit, Tammy still loses. The Bank contends that Tammy’s claims against it are barred by the statute of limitations because her injury was not latent and could have been discovered through the exercise of reasonable diligence.
¶ 44. The CDs at issue here had a listed maturity date of March 8, 2007, approximately twenty days after Tammy learned that the Bank had allowed Ronnie to remove her name from the CDs and pledge them as collateral for a loan. There is no evidence that anything occurred prior to February 18, 2007, the date that Tammy discovered the transfers, that would have put Tammy on notice that something was amiss with the CDs or would have prompt *407 ed her to inquire with the Bank about her ownership of the CDs.
¶45. Further, our supreme court has stated that
[t]he question of whether a statute of limitations is tolled by the discovery rule often turns on the factual determination of what the plaintiff knew and when. Thus, occasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion.
Stringer v. Trapp, 30 So.3d 339, 342 (¶ 12) (Miss.2010) (internal citations and quotation marks omitted). Here, it is not disputed that Tammy was originally listed as a depositor on the CDs. The contracts governing the CDs clearly state that presentment is necessary to transfer any of the CDs, and that the Bank is obligated to give notice if it is going to change any of the provisions. There is no evidence that Tammy knew anything about the transfers prior to February 18, 2007. What she should have known, if anything, prior to that date is a question of fact that must be resolved in light of the existing contractual provisions that did not give her any reason to suspect anything or put her on notice that she needed to check periodically to see if the CD funds had been withdrawn or transferred. Accordingly, I believe that the circuit court erred in granting summary judgment in favor of the Bank, as I believe there is a genuine issue of material fact as to whether the Bank breached its contractual obligations to Tammy with respect to its handling of the CDs.
¶ 46. For the reasons stated, I dissent.