# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01192-SCT

*MISSALA MARINE SERVICES, INC.*

*v.*

*JENNY KAY ODOM*

DATE OF JUDGMENT:     9/19/2000
TRIAL JUDGE:     HON. JAMES W. BACKSTROM
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     GARY L. ROBERTS
ATTORNEYS FOR APPELLEE:     KIMBERLY GOLDEN GORE
     W. LEE WATT

NATURE OF THE CASE:     CIVIL - OTHER
DISPOSITION:     AFFIRMED - 06/12/2003
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.    This civil action is an appeal by Missala Marine Services, Inc. (Missala) following a jury verdict rendered in the Circuit Court of Jackson County, Mississippi. The judgment awarded Jenny Kay Odom compensatory damages of $120,000 and punitive damages of an additional $120,000. An amended final judgment added attorney's fees and expert witness fees, increasing the total judgment in Odom's favor to $318,797.90. Aggrieved by those judgments, Missala appeals and raises the following issues:

    I.     WHETHER THE TRIAL COURT ERRED BY FAILING TO DISMISS THE CASE.

II.	WHETHER ODOM PROVED DAMAGES AS A RESULT OF MISSALA'S MISMANAGEMENT.

III.	WHETHER THE TRIAL COURT ERRED IN ALLOWING INCONSISTENT CLAIMS TO BE SUBMITTED TO THE JURY.

IV.	WHETHER THE TRIAL COURT ERRED BY PERMITTING THE JURY TO CONSIDER PUNITIVE DAMAGES.

V.	WHETHER THE TRIAL COURT ERRED IN REFUSING TO DISMISS ODOM'S CLAIM FOR MISMANAGEMENT.

VI.	WHETHER THE TRIAL COURT IMPROPERLY AWARDED ATTORNEY'S FEES AND EXPERT WITNESS FEES.

VII.	WHETHER THE COURT ERRED BY GRANTING JURY INSTRUCTIONS 4, 5, 6, 7, 7A, 8, 8A AND REFUSING INSTRUCTIONS D-1, D 11-A AND D-13A.

## FACTS

¶2.	Missala Marine Services, Inc. is a closely held corporation, originally incorporated in 1982 by brothers, Charles and Robert Graham. At the time of the corporation's formation, Charles and Robert had been involved together in many business enterprises, primarily in the marine or seafood industry, with Charles generally having an 80% interest and Robert having a 20% interest. After incorporating Missala, Charles decided to use the business for the benefit of their children. The original stock certificates were issued to Charles and Robert's children in an 80/20 split. Charles's five children received an 80% interest in Missala split equally, so each child owned a 16% interest in Missala. Likewise, Robert's two daughters each received a 10% interest in Missala. One of Robert's daughters is Jenny Kay Odom. Charles's son, David Graham ("David"), served as President of Missala.

¶3.	Thereafter, Missala purchased Offshore Anglers, Inc., becoming its parent company and sole shareholder. In 1987, Offshore Anglers acquired a $250,000 loan from AmSouth Bank in Mobile,

2

Alabama, using two shrimping vessels, the *Mr. Choper* and the *Miss Julie*, as security. AmSouth required and received personal guarantees on the loan from all seven of Missala's shareholders. In 1992, a balloon payment on the loan became due, and Missala decided to refinance the loan. Suzie Mestayer ("Suzie"), Charles's daughter, secretary of Missala, and a 16% shareholder, approached Odom to have her sign a personal guarantee for the refinancing. Suzie told Odom that the personal guarantee was for $250,000, the amount of the original loan, although Missala was refinancing the loan for just over $100,000. When Odom informed Suzie that she was uncomfortable with signing a personal guarantee, Suzie told Odom that she had previously signed a personal guarantee for the original loan. Odom was upset to learn what she had done because she felt as though she would have remembered signing a personal guarantee for such a large sum of money.

¶4.    Odom spoke to her father, Robert, and her sister, Julie Parr ("Julie"), about the refinancing, and Robert agreed to accept transfer of Odom's shares and sign the personal guarantee. Charles drafted a proposed letter and faxed it to Odom. Odom typed that letter, signed it, and sent it to AmSouth. Odom's letter, as drafted by Charles, stated that she had transferred her shares to Robert. Robert also sent a letter, stating that he had just accepted the transfer of Odom's 10% interest and would sign the personal guarantee for the refinancing. Robert contacted AmSouth again before the refinancing was complete. Robert then learned that AmSouth sought only a personal guarantee for the amount of the loan. The bank did not require shareholders to sign a personal guarantee. Since the letter to AmSouth had been unnecessary, Odom maintained control of her 10% interest. Odom continued acting as a Missala shareholder, but she never retracted the letter to AmSouth.

¶5.    In 1994, Graham Enterprises began experiencing financial difficulties. On September 8, 1995, Robert received notice of a meeting of Gulf City Seafoods' shareholders and directors. The agenda stated

3

that the board of directors and shareholders of Gulf City Seafoods needed to ratify the transfer of Sea-Fab, Inc. and Sea Savage Offshore, Inc., two of Graham's wholly-owned subsidiaries, to Missala. Robert did not attend the meetings. Charles, however, did attend the meeting, and the directors and shareholders of these companies ratified their respective transfers. Missala, which had previously been a dormant holding company, now owned $3 million in real estate, which it purchased for $1.4 million, and two more companies, which it purchased for $600,000. Missala received all of these transfers at significantly less than market value. Robert later received a copy of Graham's minutes effecting the transfer of the real estate and two subsidiaries dated September 1, 1994, thirteen months prior to Graham's and Gulf City Seafoods' shareholders approved the transfers.

¶6. Robert resigned his employment at Gulf City Seafoods, effective November 15, 1995. Shortly thereafter, David notified Odom, a 10% Missala shareholder, of a Missala shareholder meeting to be held on October 9, 1995. Odom's sister, Julie, also a 10% shareholder, was unable to attend, so she gave her proxy to Robert. On October 9, 1995, as Robert was leaving his office to pick Odom up for the meeting, Charles, who Missala admits had no interest in Missala as a shareholder, told him that "we," meaning he and his five children, had just determined who the Missala shareholders were. Charles stated that Robert owned the shares in Missala and that Odom was not a Missala shareholder and would not be allowed to attend the meeting.

¶7. Despite Charles's comments, Robert brought Odom to the shareholders' meeting. At which time, David told Odom and Robert that Odom was not a shareholder and would not be allowed to attend the meeting. David then asked Robert to sign a waiver of notice to allow the meeting to continue. Robert refused so the shareholder meeting was cancelled.

4

¶8.    In the fall of 1995, Odom spoke with Lee Watt, her present counsel, about her 10% interest in Missala and Missala's refusal to allow her to attend its shareholder meetings. Watt attempted for six months to persuade Missala to recognize Odom as a rightful owner of a 10% interest in the Missala. Approximately six months thereafter, Odom filed this suit against Missala claiming that the corporation had acted wrongfully to freeze her out of her 10% ownership interest.

¶9.    Missala maintained that Odom was not a proper shareholder. During the course of litigation, the trial court, on Odom's motion to compel production of corporate records, ordered Odom and Robert to sign affidavits regarding their ownership in the company. Odom and Robert complied with the court's directive, stating that Odom owned the shares. In response, David, Missala's president and a 16% shareholder, presented Odom with a stock certificate dated July 1997.

¶10.    The case proceeded to trial, the jury rendered a verdict against Missala but for Charles Graham. The jury awarded Odom $120,000 in compensatory damages and $120,000 in punitive damages. On Odom's post-trial motion, the trial court determined that the attorney's fees were reasonable. The final judgment awarded to Odom was $318,797.90.                          **DISCUSSION**

*FAILURE TO DISMISS*

¶11.    Missala argues that the trial court erred by failing to dismiss the case due to Odom's failure to state a cause of action upon which relief could be granted. Since issues one and five are interrelated they will be discussed simultaneously.

¶12.    Miss. R. Civ. P. 12 (b)(6) stipulates that a motion to dismiss should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of the claim. In the instant case, Odom presented several claims against Missala for the trial court's consideration: corporate freeze out, mismanagement, conspiracy, negligence, breach of fiduciary duty, and

5

fraud. The trial court having heard compelling arguments of counsel found that "the motion is not well taken and should be denied." The trial court determined that although many of the issues were aggressively contested, there was some evidence above a scintilla that required consideration.

¶13. Missala asserts that the trial court erred in its refusal to dismiss Odom's alleged claim of mismanagement. Missala argues that there is no cognizable cause of action under Mississippi law for mismanagement per se.

¶14. The granting of motions to dismiss is subject to the discretion of the trial court. *Roebuck v. City of Aberdeen*, 671 So.2d 49, 50 (Miss. 1996). "The Supreme Court can reverse trial court's grant of motion to dismiss only when there has been an abuse of discretion." *Id.*

¶15. In reviewing the record, we find there was compelling evidence presented by Odom. Additionally, there was no abuse of discretion by the trial court. For these reasons, we find no reversible error.

*FAILURE TO PROVE DAMAGES*

¶16. Missala contends that Odom had an affirmative duty to provide support for her contention of damages and failed. Missala argues that the trial court committed error by permitting the jury to consider punitive damages. Since issues two and four are interrelated they will be discussed simultaneously.

¶17. In order for damages to be awarded, Odom was required to provide substantial proof to the jury so it could have a reasonable basis to assess her loss. *Purina Mills, Inc. v. Moak*, 575 So.2d 993, 998 (Miss. 1990). The record reflects that Odom presented proof to the court through lay witness testimony, expert witness testimony and documentation.

¶18. Odom's expert witness, Jerry Levens, presented evidence on the current value of Missala's stock at the time of the trial. Levens testified that based on recent valuations of Missala, he conservatively valued the worth of the corporation at $3.55 million. Therefore, Odom's 10% interest in Missala was worth

6

$355,000. Levens based his testimony on documents in evidence. This testimony, along with the documents in evidence, provided the jury with ample evidence of the amount of damages to which Odom was entitled.

¶19. Moreover, Missala accepted Levens's estimate that Missala had a net worth of $3.55 million. Missala's own expert witness, Ken Lefoldt, agreed that Levens had valued the company properly and conservatively. Lefoldt simply testified that the value of Odom's 10% share in Missala should be reduced for two reasons: (1) Missala is a closely held corporation, so the stock was less marketable than publicly traded stock and (2) Odom's 10% interest was a minority interest, so the lack of control associated with that 10% diminished the stock's value. Lefoldt concluded that the 10% interest was not worth $355,000, but rather $120,000. Nonetheless, Missala recognized Odom's interest, which warranted damages although the actual amount of damages was still at issue. Based upon the expert testimony of Levens and Lefoldt and the documents in evidence, the jury had sufficient proof provided as to the value of a 10% interest in Missala.

¶20. Due to Missala's mismanagement, Odom's 10% interest in Missala lost some of its value. Levens, in his valuation of the stock for purposes of determining the value of Odom's 10% interest for assessing damages on her freeze out claim, also included the valuation of the *I'm Alone,* an asset that Missala sold in December 1998 for $450,000. Levens valued the *I'm Alone* at $650,000; however, his valuation included only the value of the *I'm Alone* as a vessel and not the value of the income gained from use of the *I'm Alone* as a charter boat. Although Missala alleged that the sale was a solid business decision, Lefoldt, Missala's expert witness, agreed that the $200,000 allocated for the sale of the *I'm Alone* should be included in the valuation. Therefore, Missala's own expert resolved that the *I'm Alone* was sold for significantly less than its actual value.

7

¶21. Additionally, Odom provided evidence that Missala had mismanaged assets by assigning Charles and Robert a right of first refusal on a valuable piece of property at no cost. This evidence was ample to create an issue of fact for the jury on Odom's claim of mismanagement. The trial court properly submitted the mismanagement claim to the jury. The jury's verdict was within the bounds of its discretion and was not so excessive as to evince bias, passion, or prejudice. This Court has stated that it will not overturn a jury's verdict unless no reasonable juror could find damages in the amount that the jury awarded. *Wal-Mart Stores, Inc. v. Johnson*, 807 So.2d 382, 389 (Miss. 2001). Based upon the evidence presented by expert testimony as to Missala's valuation, the jury's verdict of $120,000 compensatory damages was reasonable. In proving evidence of mismanagement, Odom had also proven damages. We find no manifest error by the trial court.

¶22. The evidence presented and the claims that Odom asserted against Missala are appropriate claims for which punitive damages may be sought. Corporate freeze out is an intentional tort that is committed with willful and wanton disregard for the right of the shareholder who is frozen out. Odom asserted in her complaint and presented evidence at trial that Missala committed gross negligence by breaching its fiduciary duty to her as a minority shareholder and not permitting her to participate as a shareholder. Both are claims for which punitive damages can be awarded in Mississippi. Because Odom presented evidence sufficient to create issues of fact for the jury on these claims, the judge was well within his discretion to allow the jury to consider an award of punitive damages. *MIC Life Ins. Co. v. Hicks*, 825 So.2d 616, 617 (Miss. 2002). For these reasons, we find no error.

*REQUEST FOR SPECIAL VERDICT FORM*

8

¶23. Missala asserts that it was error for the trial court to allow multiple inconsistent claims to be submitted to the jury on a general verdict. Missala argues a special verdict or a general verdict accompanied by answers to interrogatories is more appropriate.

¶24. According to the Miss. R. Civ. P. 49(b), "the court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. . . the court , in its discretion, may submit to the jury, together with instructions for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." Previously, this Court has held that the decision to instruct the jury by means of a special verdict or a general verdict with interrogatories is within the discretion of the trial court and will be overturned only on a showing that the lower court abused its discretion. ***W.J. Runyon & Son, Inc. v. Davis***, 605 So.2d 38, 49 (Miss. 1992), *overruled on other grounds*, ***Richardson v. APAC-Miss., Inc.,*** 631 So.2d 143 (Miss. 1994).

¶25. The record contains no request by Missala of either a special verdict or a general verdict with interrogatories. At the hearing on Missala's motion for a new trial, the trial court addressed this issue, stating that "if either side had requested special interrogatories, I would have certainly considered that. But neither side requested any special interrogatories on the issue of damages as to the particular claims, and, therefore, the jury was instructed as requested by the parties." Failure to object to an instruction at trial bars that issue on appeal. ***Jones v. State***, 776 So.2d 643, 653 (Miss. 2000). We find no error because the trial court acted within its discretion and Missala failed to object at trial.

*AWARD OF ATTORNEY'S FEES AND COSTS*

¶26. Missala argues that the trial court erred in granting an award of attorney's fees and expert witness fees. Missala argues that it has a constitutional right to a jury trial on any disputed fact question, including

Odom's claim for attorney's fees and costs. Missala further contends that the trial court erred in awarding attorney's fees by means of a post-trial motion.

¶27.    It is proper for the trial court to hold a hearing after the trial of the case to hear evidence on the issue of attorney's fees. *Smith v. Dorsey*, 599 So.2d 529, 550 (Miss. 1992).   At the hearing, the trial court determined   that the amount of attorney's fees requested was reasonable but took the decision whether to award those fees under advisement.  Ultimately, the trial court found that an award of attorney's fees was appropriate because it determined that punitive damages were appropriate and because the jury awarded Odom punitive damages.

¶28.    This Court has held that the trial court is the appropriate entity to award attorney's fees and costs. *Turner v. Terry*, 799 So.2d 25, 39 (Miss. 2001).   A trial court's decision on attorney's fees is subject to the abuse of discretion standard of review. *Id.* at 39.  Missala has presented no evidence that either the decision to award attorney's fees and expenses or the measure of that award were an abuse of the trial court's discretion.

¶29.    Missala's contention that the trial court erred in awarding attorney's fees in a post-trial motion is meritless.  The record reflects that the motion was appropriate because the complaint and amended complaint specifically prayed for attorney's fees and costs.

¶30.    For these reasons, we find no error and uphold the award of attorney's fees and costs.

*JURY INSTRUCTIONS*

¶31.    Missala asserts that the trial court erred by granting instructions 4, 5, 6, 7, 7A, 8 and 8A  and refusing instructions D-1, D-11A and D-13A.

¶32.    Missala contends jury instructions 4, 5, 6, 7, 7A, 8 and 8A should not have been submitted to the jury for consideration.  The record reflects that Missala did not object to any of the referenced instructions.

Therefore, Missala has failed to preserve this issue for appeal. *Lucas v. Miss. Housing Auth. No. 8*, 441 So.2d 101, 105 (Miss. 1983). Moreover, "[i]t is the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless a specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection." *Watson v. State*, 483 So.2d 1326, 1329 (Miss. 1986).

¶33. Missala asserts that proposed jury instructions D-1, D-11A and D-13A should have been granted. The standard of review for challenges to jury instructions is as follows:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

*Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000).

¶34. Missala complains of the trial court's refusal of D-1, which reads as follows:

> The court instructs the Jury to find for the Defendant, Missala Marine Services, Inc.

We find that this instruction contains no statement of the law and is a peremptory instruction. Consequently, this assignment of error is without merit.

¶35. Missala next complains of refused instructions D-11A and D-13A.

¶36. Refused instruction D-11A states:

> If you find for the Plaintiff in this case, you are not authorized to find for the plaintiff for any amount beyond reasonable compensation for the damages sustained by the Plaintiff, if any. You are not authorized to award any damages in the nature of a penalty or attorney's fees, nor are you bound by any estimates of damages made by the attorneys representing the parties in this suit. You are not authorized to award damages based upon the alleged value of the shares of stock of the Defendant, Missala Marine Services Corporation. If you find for the Plaintiff, you must therefore confine your verdict to reasonable compensation for the damages actually sustained, if any, by the Plaintiff as a result of the conduct of the Defendant or Defendants.

11

¶37.  Refused instruction D-13A states:

> If you are to determine that the Plaintiff has successfully proved the elements of her claims and that she is entitled to recovery in this case, you are limited to compensating the Plaintiff through an award of monetary damages in this court. By choosing to bring her claims in this court, Plaintiff has requested that she be compensated through the award of money and not through any equitable relief which you may deem appropriate.

> In other words, you are not to consider whether or not the company should be dissolved or liquidated or Plaintiff should transfer or sell her stock or be given certain rights in the company. A plaintiff's offer to transfer her shares cannot be ordered. The only award in favor of the Plaintiff which you or his court can give is money damages.

¶38.  We find that the trial judge refused these instructions because he believed that the jury would be fairly instructed by all of the instructions as a whole. The trial judge gave instructions 8 and 8A, which were comprehensive damages instructions. Consequently, we find this assignment of error is without merit.

### CONCLUSION

¶39.  For the reasons indicated above, we affirm the judgment below.

¶40.  **AFFIRMED.**

**McRAE, P.J., DIAZ, EASLEY AND CARLSON, JJ., CONCUR. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J, WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶41.  I concur in the affirmance of the award of compensatory damages only. However, I respectfully dissent from the affirmance of the awards of punitive damages and attorney's fees and expert witness fees. The majority states that a claim of corporate freeze out can support a punitive damages claim. Perhaps this is so when the directors of a corporation act in an egregious manner. Punitive damages are available in cases of gross negligence, willful misconduct, fraud, malicious conduct, or reckless disregard for the rights

of others. ***Hurst v. Southwest Miss. Legal Servs. Corp.***, 708 So. 2d 1347, 1350 (Miss. 1998); ***Richardson v. Byrd,*** 215 So. 2d 424, 425 (Miss. 1968). However, punitive damages are only to be allowed in extreme cases. ***Beta Beta Chapter of Beta Theta Pi Fraternity v. May***, 611 So. 2d 889, 894 (Miss. 1992).

¶42. In the case at bar, there was a genuine issue as to who was the proper owner of the stock in Missala Marine Services, Inc. ("Missala"). David Graham ("David") had knowledge of letters to AmSouth Bank, signed by Jenny Kay Odom ("Odom"), indicating the stock in question had been transferred from Odom to her father. Given the uncertainty surrounding the owner of the stock, it was not gross negligence to refuse to allow Odom to participate as a shareholder. Similarly, Missala cannot, as the majority asserts, be grossly negligent in breaching a fiduciary duty to a shareholder when there is a real question as to whom that duty is owed.

¶43. Good faith is a defense to a punitive damages claim. ***Walker v. Brown***, 501 So. 2d 358, 363 (Miss. 1989). Here, there is evidence that David acted in good faith to protect the interests of the corporation when he did not allow an individual he did not feel was a shareholder to participate in corporate activities. David's understandable (though ultimately incorrect) refusal to allow Odom's participation should not support a claim for punitive damages. Punitive damages are not appropriate when the wrong results from an honest mistake. The mere fact that the case at bar involves a claim of corporate freeze out does not automatically mean that punitive damages can be awarded. There must be egregious behavior by the wrongdoer to support punitive damages. David's actions do not rise to this level.

¶44. Missala's allegation that it is entitled to a jury trial regarding the award of attorney's fees and expert witness fees is without merit. However, since Missala's behavior did not merit an award of punitive damages, I agree that the attorney's fees and the expert witness fees granted by the trial court to Odom

13

are not appropriate.  Thus, I respectfully concur in part and dissent in part and would reverse and render both the punitive damages and award of attorney's fees and expert witness fees.

**PITTMAN, C.J., WALLER AND COBB, JJ., JOIN THIS OPINION.**