# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-01159-SCT

*DEKARA CLANTON a/k/a DEKARA ALEXANDER CLANTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/18/2020 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| TRIAL COURT ATTORNEYS: | DENNIS CHARLES SWEET, IV |
| | DENNIS C. SWEET, III |
| | LAWRENCE STEPHEN BLACKMON |
| | CHRISTOPHER TODD McALPIN |
| | ASHLEY RIDDLE ALLEN |
| | JOHN K. BRAMLETT, JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JANE E. TUCKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA ROSENBLATT |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/08/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. On November 8, 2017, Officer Latayvin Taylor stopped Dekara Clanton for not having his license plate illuminated. During a subsequent search of Clanton's vehicle, Officer Taylor found a bag of multicolored pills behind the radio. Clanton was indicted for the intentional possession of a quantity of twenty dosage units but no more than forty dosage units of methamphetamine. Clanton was tried and convicted on December 5, 2019. He was

sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with the potential to be released after eight years and placed on five years of post-release supervision. Clanton now appeals his conviction, arguing: (1) the trial court erred by allowing photographs and testimony about money taken from Clanton's person; (2) the trial court erred by allowing photographs and testimony about marijuana; (3) the trial court erred by allowing Officer Taylor to testify that he thought he found ecstasy in Clanton's vehicle; (4) the trial court erred by overruling Clanton's objection to the State's alleged misstatement of evidence in its closing argument; and (5) the verdict was not supported by the evidence and was against the overwhelming weight of the evidence. Upon review of the record, this Court affirms Clanton's conviction.

**FACTS**

¶2. On November 8, 2017, Officer Latayvin Taylor began a traffic stop of Clanton's vehicle after noticing that its license plate was not illuminated. Officer Taylor noticed the smell of marijuana emanating from the vehicle as he approached. Upon a subsequent search of the vehicle, with Clanton's permission, Officer Taylor discovered and seized marijuana in the main cabin of the vehicle. Clanton admitted the marijuana was his. Officer Taylor also found a bag of multicolored and multishaped pills behind the radio of the vehicle. Officer Taylor detained Clanton. A field test was performed on the pills, and the results indicated the pills were methamphetamine.

¶3. A grand jury indicted Clanton for violating Mississippi Code Section 41-29-139, which prohibits the unlawful, willful, knowing, felonious, and intentional possession of a

2

quantity of twenty dosage units but no more than forty dosage units of methamphetamine. Clanton's trial for his drug possession charge began on December 5, 2019.

¶4.     The State's first witness was Officer Taylor. He testified that he came into contact with Clanton on November 8, 2017, at 1:37 a.m. on Highway 55 in Madison County, Mississippi. Officer Taylor stated that he initially pulled Clanton over for a traffic stop because Clanton did not have "illumination lights on his license plate." Officer Taylor testified that as he approached Clanton's vehicle, he "smelled a strong odor of marijuana coming from the vehicle," and he noticed that Clanton and a juvenile were in the vehicle. Officer Taylor stated that he asked Clanton for his license, and Clanton provided a Texas license. Officer Taylor testified that he ran Clanton's license and that it was marked "not eligible."

¶5.     Officer Taylor testified that he returned to the vehicle and asked Clanton to step out and conducted an "officer pat-down." He explained that he conducted this pat-down because Clanton had an ineligible license, no insurance, and because of the smell of marijuana. The pat-down yielded a "billfold of 20s and . . . smaller bills" in Clanton's front left pocket, totaling $1,204. Officer Taylor testified that once he completed the pat-down, he asked Clanton if there were any narcotics in the vehicle. Officer Taylor stated that Clanton responded, "[T]here's nothing in the vehicle and you can check, go ahead."

¶6.     Officer Taylor stated he returned to the vehicle, asked the passenger to step out and walk to the patrol car, and searched the vehicle. Officer Taylor testified that "[o]n the passenger's side under the passenger's seat I found a cigar roll with a green leafy substance

3

within it that led me to believe that it was marijuana from my training and experience." After Officer Taylor found the cigar roll, he went to the driver's side of the vehicle, where he found "a green nugget between the seat and the seat belt mechanism."

¶7.     Officer Taylor explained that he continued searching the vehicle because the smell emanating from the vehicle was too strong to have only come from the rolled cigar and nugget. "I checked the vents . . . . I realized that the radio within the vehicle was not properly installed and half the radio was stuck out and the other half was pushed in." Taylor stated that he "looked around the radio," but he was not able to see behind the radio because the "radio string was so big that you could not see the AC controls or any of the mechanism and knobs." Taylor testified that he "pulled the radio out" and saw "a clear plastic bag beneath the radio." Taylor testified that the plastic bag had "multi-color multi-shaped pills inside of it and it also had a[n] additional bag of marijuana inside of it." Officer Taylor stated that based on his training and experience, he believed the pills were ecstasy.

¶8.     Officer Taylor testified that after his search of the vehicle, he detained and Mirandized[1] Clanton. Officer Taylor stated that Clanton told him the cigar was his. Officer Taylor explained that he used a field test kit used to detect methamphetamine, MDMA, and ecstasy to determine if the pills found in Clanton's vehicle were, in fact, narcotics. Officer Taylor stated that the test kit used on the pills found tested positive for methamphetamine.

¶9.     On cross-examination, Officer Taylor confirmed that Clanton only admitted to "the marijuana, the roll of marijuana." Officer Taylor explained that he did not arrest the juvenile

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

in the car with Clanton. Officer Taylor was asked, "So my question was that you arrested him based off your investigation you believed that the drugs in the car belonged to him so you made the arrest?" Taylor responded, "Yes, sir."

¶10. On redirect examination, Officer Taylor explained that he arrested Clanton because he was in control of the car, was driving the car, seemed to own the car, and had knowledge about the workings of the car.

¶11. The State's next witness was Arcie Nichols, a forensic scientist at the Mississippi Crime Lab. Nichols was tendered as an expert in forensic science specializing in drug identification. Nichols testified that he performed chemical and color tests on the narcotics seized from Clanton's vehicle. He stated that the tests revealed that "the tablets I tested contained methamphetamine." Nichols testified that in total, there were twenty-six whole tablets and eight partial tablets in the bag he tested.

¶12. On cross-examination, Nichols admitted that he did not perform a fingerprint analysis test on the bags the evidence arrived in at the crime lab. Nichols also stated that he did not know if a touch DNA analysis was conducted on the bags.

¶13. On redirect examination, Nichols was asked if it is "common for requests to come in for fingerprints or DNA on narcotics?" He responded, "Occasionally, we have crossovers." After Nichols's redirect examination, the State rested.

¶14. The Defense called one witness, Shaquile Jackson, to testify in its case-in-chief. Jackson testified that he grew up on the same street as Clanton and has had a life long drug problem. Specifically, Jackson testified that he takes four to five ecstasy pills a day and

5

smokes marijuana occasionally. Jackson testified that Clanton lets Jackson borrow his car, and he borrowed Clanton's car on November 8, 2017. Jackson stated that on November 8, 2017, he used Clanton's car to run errands and while doing so, he "stopped and got pills."

¶15.    Jackson stated that after he purchased the pills, he took a few and stopped at a store to get a drink. Jackson testified that, "in the process of me getting out of the car, I s[a]t the pills right there on the radio thing and I got out of the car. And when I got back in I forgot . . . the pills were there because I was under the influence." When asked to explain where he put the pills, Jackson stated, "It's a eject button. [H]e has a TV/radio and it's a eject button and the radio falls down and I s[a]t it right there." Jackson also stated that the pills were in a small sandwich bag. Jackson stated that he could not remember exactly what the pills looked like by he knew there were "all shape, all colors, and [had] different symbols on them."

¶16.    Jackson testified that on November 8, 2017, he did not have any marijuana. He also testified that he left his pills in Clanton's car, returned the car to Clanton, and never told Clanton that there were pills in the car because Jackson thought he "had them on [him]." Jackson was shown Exhibit 3 and testified that the pills in that photograph accurately reflected the pills he left in Clanton's vehicle, but Jackson testified that there was not a bag of marijuana inside the bag of pills when he left it in Clanton's vehicle.

¶17.    Jackson explained that when he heard Clanton had been arrested, he realized the pills found in Clanton's car were actually his. Jackson stated that he never reported this to law enforcement because he did not want to go to jail. Jackson testified that he has come forward

6

now because he learned Clanton was "fixing to get sentenced and [he] felt bad" because he knew the pills were not Clanton's.

¶18. On cross-examination, Jackson testified he worked night shifts and routinely took pills with him to work. Jackson stated that at 1:30 a.m. on November 8, 2017, he realized he did not have his pills with him, but he did not call Clanton to let him know the pills were in his vehicle. The State asked, "So you didn't know where they were at 1:30 in the morning but now two years later you just distinctly remember leaving them in the radio?" Jackson responded, "No. When I got off work and found out that he was . . . in jail and I asked why, they said the pills and then it . . . hit me that . . . I left them in the radio."

¶19. Jackson testified that he started taking ecstasy pills on November 18, 2017, in the "daytime."[2] Jackson could not remember the exact time he started taking pills on November 8, 2017, nor could he remember the name of the person he purchased pills from, even though he testified to purchasing pills from the same person every day.

¶20. Jackson testified that he did not put marijuana in the bag of pills nor did he bring marijuana into Clanton's vehicle. He also stated that he put the pills "beside the radio" where the "CD would come out." He further explained that he placed the pills "next to the CD . . . holder that had flopped down." The defense rested after Jackson's testimony.

¶21. The jury ultimately convicted Clanton, and he was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with the potential to be

---

[2] Jackson thought November 18, 2017, was the day Clanton got arrested. The State asked if it was "safe to say you don't know what day this was on," and Jackson responded, "No, I knew." Jackson stated that he got the dates "mixed up" because this happened two years ago and when he is under the influence, his short-term memory is affected.

released after eight years and placed on five years of post-release supervision. Clanton now appeals his conviction.

## ISSUES

¶22. Clanton raises five issues on appeal: (1) the trial court erred by allowing photographs and testimony about money taken from Clanton's person; (2) the trial court erred by allowing photographs and testimony about marijuana; (3) the trial court erred by allowing Officer Taylor to testify that he thought he found ecstasy in Clanton's vehicle; (4) the trial court erred by overruling Clanton's objection to the State's alleged misstatement of evidence in its closing argument; and (5) the verdict was not supported by the evidence and was against the overwhelming weight of the evidence. Upon review of the record, this Court affirms Clanton's conviction.

## DISCUSSION

**1.    The trial court erred when it admitted photographs of money seized from Clanton's person, but the error was harmless.**

¶23. Clanton argues that the trial court erred by admitting photographs of money taken from Clanton's pockets and by allowing Officer Taylor to testify about the money. Clanton claims that the photographs and testimony were prejudicial because he was only charged with possession of methamphetamine. We review a trial court's admission or exclusion of evidence for abuse of discretion. *Carothers v. State*, 152 So. 3d 277, 281 (Miss. 2014) (citing *Osborne v. State*, 54 So. 3d 841, 845 (Miss. 2011)). This Court will only reverse the trial court's decision if "the error adversely affects a substantial right of a party." *Id.* (internal quotation marks omitted) (quoting *Osborne*, 54 So. 3d at 845).

8

¶24.  In a motion in limine, Clanton's attorney objected to the State's intention to introduce a photograph of money laid out on a table.  He argued that the photos would be prejudicial because Clanton was charged with possession, not possession with intent to distribute.  The trial court ultimately determined that the photographs were more probative than prejudicial because the money was part of the items found during Officer Taylor's search.  At trial, the photograph of the money found in Clanton's pockets was admitted as Exhibit 4.  At the pretrial hearing, the trial judge specifically stated: "I'm not ruling on testimony right now. All I'm ruling on is the admissibility of the picture."  Clanton's attorney went on to object to the specific photograph of the money, which he argued was especially prejudicial since the money was "spread across a table the same way they would be in a press conference where there was a big bust" related to distribution.  The trial judge went on to rule that the prosecution could not elicit testimony from the officer suggesting a connection between the money and the drugs.  When Officer Taylor testified about the money, Clanton did not object.

¶25.  It could be argued that Clanton's attorney complained about the testimony and was clearly opposed its admission, but he never clearly articulated an objection distinct from his objection to the admission of the photograph, nor did he secure a ruling from the trial court on whatever objection he may have had to the testimony.  Clanton's "failure to secure a ruling from the trial court and subsequent failure to object contemporaneously waived this issue for appeal."  ***Corrothers v. State***, 148 So. 3d 278, 316 (Miss. 2014) (citing ***King v.***

*State*, 960 So. 2d 413, 438 (Miss. 2007); *Grayson v. State*, 806 So. 2d 241, 254-55 (Miss. 2001)).

¶26.    The failure to object to Officer Taylor's testimony about the money procedurally bars Clanton from raising the issue that Officer Taylor's testimony was prejudicial.  *Missala Marine Servs., Inc. v. Odom*, 861 So. 2d 290, 296 (Miss. 2003).  Clanton is not, however, barred from appealing the admission of Exhibit 4, showing the money seized, as he properly objected to the admission of the picture.

¶27.    Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[,]" and if "the fact is of consequence in determining the case."  MRE 401(a)-(b).  Relevant evidence may be excluded from trial if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence ."  MRE 403; *Corrothers*, 148 So. 3d at 310.  Additionally, evidence that is not relevant is never admissible.  MRE 402; *Flowers v. State*, 773 So. 2d 309, 318 (Miss. 2000).

¶28.    The admission of the photograph caused unfair prejudice, confusion of the issues, and misled the jury.  *See Corrothers*, 148 So. 3d at 310.  Clanton was not charged with intent to sell or transfer, and the State offered no evidence of intent to sell or transfer.  Nor did the State offer evidence supporting a connection between the money and the drugs—the drugs were found in Clanton's car, while the money was on his person.  Also, the money was not photographed in the form in which it was found, but it had been spread out on a table in a

manner that, as Clanton argued, sensationalized its presence and evoked imagery associated with police busts of large drug-dealing operations. The effect of the photograph was to go beyond telling the whole story of the discovery of the drugs and Clanton's arrest. Instead, it produced an unsupported inference that Clanton was involved in the drug trade. The probative value of the photograph was therefore substantially outweighed by the danger of unfair prejudice, and it was error for the trial court to admit the photograph. *See* MRE 403.

¶29. While the trial court committed an error by admitting the photograph of money, that error is harmless because the photograph was cumulative to the officer's testimony that he recovered the money from Clanton; Clanton objected to the testimony but never secured a ruling concerning it.

¶30. "The United States Supreme Court has explained that 'a defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." ***Smith v. State***, 986 So. 2d 290, 300 (Miss. 2008) (quoting ***Brown v. United States***, 411 U.S. 223, 231, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973)). Some constitutional rights that are so basic to a fair trial that a violation can never be harmless error; but "most constitutional errors can be harmless." ***Id.*** (internal quotation marks omitted) (quoting ***Neder v. United States***, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

¶31. "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." ***Id.*** (alteration in original) (internal quotation marks omitted) (quoting ***Delaware v. Van Arsdall****, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).

Harmless errors are those "which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Conners v. State*, 92 So. 3d 676, 684 (Miss. 2012) (internal quotation marks omitted) (quoting *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967)). "To apply the harmless error analysis . . . this Court must determine whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [the] evidence." *Veasley v. State*, 735 So. 2d 432, 437 (Miss. 1999) (alterations in original) (internal quotation marks omitted) (quoting *Fuselier v. State*, 702 So. 2d 388, 391 (Miss. 1997)).

¶32. We examine the weight and sufficiency of the evidence in detail below. Based on that analysis, we conclude that the evidence is more than sufficient to overcome any prejudice Clanton may have suffered from the admission of the photograph, given that he did not preserve an objection to the testimony about the money. And the verdict was not against the weight of the evidence. Further, the admission of the photograph of money was harmless error.

> **2.** **The trial court did not err by allowing testimony and photographs about marijuana found in Clanton's vehicle.**

¶33. Clanton also argues that the trial court erred by allowing "extensive" testimony and photographs of marijuana found in Clanton's vehicle. Specifically, Clanton argues this was error because it was more prejudicial than probative as Clanton was charged with possessing methamphetamine and because the admission violated Mississippi Rule of Evidence 404(b), which governs evidence of other bad acts or crimes. The State argues that this evidence was

12

admissible under Mississippi Rule of Evidence 404(b)(2) to show Clanton's "opportunity to control the methamphetamine pills, his knowledge of the illicit nature of the pills, and to tell a complete story of the crime." The State also argues that the evidence was admissible to tell a complete story of how Officer Taylor's initial traffic stop led to the ultimate discovery of the methamphetamine pills in Clanton's vehicle. As stated above, we review a trial court's admission of evidence for an abuse of discretion. *Carothers*, 152 So. 3d at 281(citing *Osborne*, 54 So. 3d at 845).

¶34. "Generally, Mississippi's evidentiary rules do not permit evidence of other crimes, wrongs, or acts to prove a person's character to show he or she acted in conformity therewith." *Bowman v. State*, 283 So. 3d 154, 164 (Miss. 2019) (citing MRE 404(b)(1)). But Mississippi Rule of Evidence 404 provides exceptions to this rule. *Id.*; *see also* MRE 404(b)(2). Evidence of a person's crimes, wrongs, or other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶35. "Trial judges also have discretion to admit '[e]vidence of other crimes or bad acts' for reasons not listed in Rule 404(b)(2), like "tell[ing] the complete story so as not to confuse the jury.'" *Bowman*, 283 So. 3d at 165 (alterations in original) (internal quotation marks omitted) (quoting *Palmer v. State*, 939 So. 2d 792, 795 (Miss. 2006)). Additionally, evidence or testimony can be given at trial, even if it could reveal or suggest other crimes, if it was substantially necessary to present the complete story of the crime to the jury. *Ballenger v. State*, 667 So. 2d 1242, 1257 (Miss. 1995) (quoting *Brown v. State*, 483 So. 2d

13

328, 330 (Miss. 1986)). Other acts evidence, however, must not be more prejudicial than probative. MRE 403.

¶36. The evidence Clanton takes issue with relates to the admission of bad acts at trial. This Court's decision in **Ballenger** is instructive. 667 So. 2d 1242. Ballenger and two others, James Head and Ronald Ritter, went to Myrtle Ellis's home to rob Ellis. *Id.* at 1247. When they asked Ellis where her money was, she stated that it had been deposited at the bank. *Id.* at 1248. She was beaten and left unconscious in her home. *Id.* Ballenger and the two other men returned to Ellis's home, where Head attempted to burn the home down. *Id.* at 1249. No smoke was coming from the home, however, so they returned. *Id.* Ritter set Ellis's house on fire, but before lighting a pile of clothes on fire, he noticed Ellis was lying outside. *Id.* When the fire department arrived, they found Ellis unconscious, lying next to a shed outside. *Id.* at 1249. Ellis was taken to the hospital, where she died. *Id.*

¶37. At trial, Ballenger made a motion in limine to bar the introduction of evidence the other crimes "concerning the alleged arson of [Ellis's] house . ." and testimony about Ballenger's statements to Head and Ritter about returning to Ellis's house to kill her. *Id.* (internal quotation marks omitted). This Court had to determine whether the trial court erred by admitting other crimes evidence. *Id.* Ultimately, this Court found that it was not error to admit evidence and testimony of the alleged arson under Mississippi Rule of Evidence 404. *Id.* at 1257.

¶38. This Court explained that as a general rule, evidence of a crime other than the one the accused is being tried for is not admissible unless it falls under an exception of Rule 404(b)

14

and passes muster under Rule 403. *Id.* at 1256-57. This Court continued, stating that in *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994), it found "where another crime or act is 'so interrelated [to the charged crime] as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,' proof of the other crime or act is admissible." *Ballenger*, 667 So. 2d at 1256-57 (alteration in original) (quoting *Duplantis*, 644 So. 2d at 1246). This Court further explained: "Where substantially necessary to present to the jury 'the complete story of the crime' evidence or testimony may be given even though it may reveal or suggest other crimes." *Id.* at 1257 (quoting *Brown*, 483 So. 2d at 330).

¶39.    This Court found that Ballenger, Head, and Ritter's decision to return to Ellis's home and burn it was an "integral part of the story surrounding Ellis' death." *Id.* at 157. This Court explained that the house burning was never characterized as arson, even though that would be the presumption based on the facts. *Id.* This Court continued, stating that even though the actions taken to burn the home occurred after Ellis was beaten unconscious, the events were "closely interrelated and the evidence was admissible for the purpose of showing intent, plan, knowledge and identity." *Id.*

¶40.    Clanton is similarly situated to Ballenger. The marijuana cigarette was necessary to tell the whole story of the traffic stop and how the officer came to search the vehicle and discover the methamphetamine pills. Moreover, the fact that more marijuana was found inside the bag with the methamphetamine pills turned out to be important because Clanton's alibi witness could not explain its presence—he claimed to have put the pills there but not the marijuana. This was evidence that someone else had placed the marijuana in the bag with

15

the methamphetamine pills and was therefore aware of their presence. It was a fair inference that Clanton knowingly possessed the pills because he had placed marijuana in the bag with them. Clanton was, after all, charged with possession of the methamphetamine pills, not *ownership*; the jury could have largely believed his alibi's testimony and still convicted Clanton of knowing possession. The presence of the marijuana was critical proof and thus was quite probative of guilt. This Court finds no merit to this issue.

> **3.  The trial court did not err by allowing Officer Taylor to testify, based on his training and experience, that he thought the pills he found in Clanton's vehicle were ecstasy.**

¶41.  Clanton also argues that the trial court erred by allowing Officer Taylor to testify, based on his training and experience, that he thought the pills found in Clanton's car were ecstasy. Clanton's attorney, however, failed to object to this testimony at trial. This Court has held that the failure to raise an objection to evidence presented at trial procedurally bars the issue on appeal. ***Ronk v. State***, 172 So. 3d 1112, 1134 (Miss. 2015). Further, Clanton has not requested that this Court review the issue under a plain error analysis. Therefore, this Court finds that Clanton is procedurally barred from raising this issue on appeal.

> **4.  The trial court did not err by overruling Clanton's objection to the State's alleged misstatement of the evidence in closing arguments.**

¶42.  Next, Clanton argues that the trial court erred when it overruled Clanton's objection to the State's alleged misstatement of the evidence in its closing argument. This Court reviews attorney misconduct in closing arguments by determining "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." ***Galloway v. State***, 122 So.

16

3d 614, 643 (Miss. 2013) (internal quotation marks omitted) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000)).

¶43. Attorneys have wide latitude when making their closing arguments, but they cannot employ tactics that are "inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Id.* (internal quotation marks omitted) (quoting *Sheppard*, 777 So. 2d at 661). Rather, closing arguments should "fairly sum up the evidence" presented at trial. *Rogers v. State*, 796 So. 2d 1022, 1027 (Miss. 2001). A prosecutor should "point out those facts upon which the prosecution contends a verdict of guilty would be proper." *Id.* (citing *Clemons v. State*, 320 So. 2d 368, 370 (Miss. 1975)).

¶44. Further, a prosecutor can comment on facts in evidence, and he can draw proper deductions and inferences from the facts. *Id.* (citing *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)). A prosecutor, however, cannot "state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudice of men by injecting prejudices not contained in some source of the evidence." *Sheppard*, 777 So. 2d at 661 (internal quotation mark omitted) (quoting *Williams v. State*, 445 So. 2d 798 (Miss. 1984)).

¶45. Clanton argues that the following statement was a misstatement of the evidence:

> But I can tell you what I do know is that [Clanton] was driving the car with marijuana and ecstasy pills in it. Nobody else was in the car from the time that . . . Jackson says he left the pills in there until [Officer] Taylor got there.

Based on the evidence presented at trial, the statement made by the prosecution during closing argument was not a misstatement of evidence. First, testimony from Officer Taylor

17

and Jackson show that Clanton was driving the vehicle in which marijuana and methamphetamine pills were found. Additionally, testimony from Jackson proves: "Nobody else was in the car from the time that . . . Jackson says he left the pills there until [Officer] Taylor got there." Further, Jackson testified that he left the pills in Clanton's car and returned the car to Clanton.

¶46. In his brief to this Court, Clanton argues that the State's classification of pills as ecstasy was a misstatement of evidence. This argument fails for two reasons.

¶47. First, Clanton's own counsel also used meth and ecstasy interchangeably throughout trial. In the defense's opening statement, Clanton's attorney told the jury they would hear from Jackson, and Jackson would tell them, "I take ecstasy everyday." Clanton's attorney also told the jury Jackson would tell them "that he put the ecstasy pills behind the radio . . . ." Additionally, Clanton's attorney told the jury that it would "hear when you break ecstasy down it's methamphetamine."

¶48. Second, Clanton cannot prove prejudice. The trial court overruled the objection, and it instructed the jury, "[I]f your recollection of the evidence differs from what [the State] just repeated, then you should follow your own recollection of the evidence." "It is presumed that jurors follow the instructions of the court." *Johnson v. State*, 475 So. 2d 1136, 1142 (Miss. 1985) (citing *Payne v. State*, 462 So. 2d 902, 904 (Miss. 1984); *Carter v. State*, 450 So. 2d 67, 69 (Miss. 1984)) (finding no prejudice when the trial court instructed the jury to disregard the court's reading of the wrong indictment). As the *Johnson* Court stated, to

18

presume a jury would refuse to follow the instruction of the court "would be to render the jury system inoperable." *Id.*

### 5. The verdict was supported by the evidence and was not against the overwhelming weight of the evidence.

¶49. This Court reviews a challenge to the sufficiency of the evidence in the light most favorable to the prosecution. *Rainey v. State*, 334 So. 3d 1124, 1128 (Miss. 2022). This Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *Body v. State*, 318 So. 3d 1104, 1108 (Miss. 2021)). The prosecution is given all favorable inferences that can be reasonably drawn from the evidence. *Parish v. State*, 176 So. 3d 781, 785 (Miss. 2015).

¶50. Clanton was convicted under Mississippi Code Section 41-29-139, which prohibits the unlawful, willful, knowing, felonious, and intentional possession of a quantity of twenty dosage units but no more than forty dosage units of methamphetamine. Miss. Code Ann. § 41-29-139 (Rev. 2018). Through testimony of two witnesses and through physical evidence, the State proved Clanton unlawfully, willfully, knowingly, and intentional possessed more than twenty but no more than forty units of methamphetamine.

¶51. Officer Taylor testified that after obtaining consent to search Clanton's vehicle, he found a "cigar roll with a green leafy substance within it that led [him] to believe that it was marijuana from [his] training and experience." Officer Taylor testified that Clanton admitted the cigar was his. Officer Taylor stated that he also found a "green nugget between the seat and the seat belt mechanism." Officer Taylor testified that after finding the rolled cigar and

19

"nugget," he "pulled out the radio" and found a clear plastic bag that contained "multi-color multi-shaped pills inside of it and it also had a[n] additional bag of marijuana inside of it." Further, Officer Taylor testified that based on his training and experience, he believed the pills were ecstasy. Additionally, when Officer Taylor conducted a field test kit on the pills he found they tested positive for methamphetamine.

¶52. Officer Taylor also explained that he believed the drugs found in the vehicle were Clanton's. He explained that he believed this because Clanton was in control of the car, Clanton was driving the car, Clanton seemed to own the car, and Clanton had knowledge about the workings of the car.

¶53. Nichols testified that the pills Officer Taylor seized from Clanton's vehicle were tested at the Mississippi Crime Lab, and the results came back as positive for methamphetamine. Nichols also stated that he tested a total of twenty-six whole tablets and eight partial tablets.

¶54. Clanton also called a witness to provide a different version of events. Jackson testified that he "stopped and got pills" on November 8, 2017, while he was borrowing Clanton's vehicle. Jackson testified that the pills were in a small sandwich bag. Jackson explained that when he walked into a store to get a drink, he "s[a]t the pills right there on the radio thing." Jackson later described the spot he placed the pills as "beside the radio" where the "CD would come out."

¶55. Jackson testified that he forgot about the pills when he returned because he was under the influence. Jackson stated that there was not a bag of marijuana inside the bag of pills

20

when he left it in Jackson's vehicle. Additionally, Jackson stated that he did not put marijuana in the bag of pills or bring marijuana into Clanton's vehicle.

¶56. The jury is the ultimate trier of fact. *Howell v. State*, 860 So. 2d 704, 731 (Miss. 2003). "Jurors are permitted to, and have a duty to, resolve conflicts in testimony they hear." *Hicks v. State*, 812 So. 2d 179, 194 (Miss. 2002) (quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983); *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979)). The jury listens to evidence presented, observes the witnesses' demeanor, determines witness credibility, and decides what weight to give each piece of evidence. *Bridges v. State*, 716 So. 2d 614, 617 (Miss. 1998) (quoting *Groseclose*, 440 So. 2d at 300-01).

¶57. Here, the jury heard testimony from Jackson that he purchased the multicolored pills while borrowing Clanton's vehicle and that he left the pill bag, which had no marijuana in it when Jackson last saw it, in Clanton's vehicle. The jury heard Officer Taylor testify that he found what he believed to be marijuana in the car Clanton was driving. The jury also heard Officer Taylor testify that Clanton confessed to possessing a cigar containing what Officer Taylor believed to be marijuana. Further, the jury heard Officer Taylor testify that he found what he believed to be marijuana in a bag along with multicolored pills behind the radio in the vehicle Clanton was operating. Finally, the jury heard Nichols testify that the multicolored pills Officer Taylor seized from Clanton's vehicle tested positive for methamphetamine.

¶58. The jury heard all of this evidence, assigned weight to each piece of evidence, and convicted Clanton of possession. In reviewing the evidence in a light most favorable to the

State, this Court finds that the State proved the essential elements of possession, and the evidence was sufficient to convict Clanton.

¶59.    Clanton's conviction is also supported by the overwhelming weight of the evidence. When determining the weight of the evidence, this Court does not act as the thirteenth juror. *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017).  It will not make "independent resolutions of conflicting evidence" nor will it "reweigh or make witness-credibility determinations." *Id.*  Instead, this Court weighs the evidence in a light most favorable to the verdict, "only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (Miss. 2017)).

¶60.    As detailed above, the State provided the jury with sufficient evidence to convict Clanton of possession.  The jury determined witness credibility, weighed evidence, and made independent resolutions of conflicting evidence.  Therefore, this Court finds that the jury's verdict was not contrary to the overwhelming weight of the evidence presented at trial.

### CONCLUSION

¶61.    This Court affirms Clanton's conviction.

¶62.    **AFFIRMED.**

        **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**